KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
LAWRENCE Y. ISER (SBN 094611)
liser@kwikalaw.com
KRISTEN L. SPANIER (SBN 181074)
kspanier@kwikalaw.com
GREGORY S. GABRIEL (SBN 239902)
ggabriel@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: (310) 566-9800
Facsimile: (310) 566-9850

NORTON ROSE FULBRIGHT US LLP
JOHN M. SIMPSON (admitted *pro hac vice*)
john.simpson@nortonrosefulbright.com
MICHELLE C. PARDO (admitted *pro hac vice*)
michelle.pardo@nortonrosefulbright.com
799 9th Street, NW
Suite 1000
Washington, D.C. 20001-4501
Telephone: (202) 662-0200
Facsimile: (202) 662-4643

Attorneys for Defendant
SEAWORLD ENTERTAINMENT, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOLLY HALL, PAUL DANNER, VALERIE SIMO, JOYCE KUHL, and ELAINE BROWNE, individually and on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SEAWORLD ENTERTAINMENT, INC.,<br><br>Defendant. | Civil Action No. 3:15-cv-660-CAB-RBB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**<br><br>Motion Date: n/a<br>Time: n/a<br>Courtroom: 4C<br>Judge: Catherine Ann Bencivengo |

DOCUMENT PREPARED ON RECYCLED PAPER

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................ 1

II.     THE FAC MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO ALLEGE THEIR CLAIMS WITH THE REQUISITE LEVEL OF SPECIFICITY ........................................................................................... 3

    A.      Legal Standard ..................................................................................... 4

    B.      Plaintiffs Do Not Plead Specific Facts Sufficient to State a Claim for Actionable Misrepresentations ............................................................ 5

    C.      Plaintiffs Do Not Plead Specific Facts Sufficient to State a Claim for Actionable Non-Disclosure ................................................................. 8

        (1)    Plaintiffs Fail to Sufficiently Allege a Duty by SeaWorld to Disclose the Allegedly Withheld "True" Facts ............................. 9

        (2)    Plaintiffs Fail to Sufficiently Allege the Material Information Which SeaWorld Purportedly Concealed or Omitted ................. 10

III.    PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF MUST BE DISMISSED FOR LACK OF ARTICLE III STANDING BECAUSE PLAINTIFFS CANNOT DEMONSTRATE A THREAT OF REPEATED INJURY .................................................................................................... 11

    A.      Legal Standard ................................................................................... 11

    B.      Plaintiffs Cannot Meet Their Burden of Demonstrating a Threat of Repeated Injury Because They Do Not Intend to Purchase Future SeaWorld Tickets ............................................................................... 12

IV.     ALL OF PLAINTIFFS' CLAIMS FAIL TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED .......................................................... 13

    A.      Legal Standard ................................................................................... 13

    B.      All of Plaintiffs' Statutory Claims Fail Because Plaintiffs Do Not Have an Economic Injury or Actual Damages Caused by Any Alleged Misrepresentation About the Items Purchased ................................... 14

        (1)    UCL and FAL ........................................................................... 14

        (2)    CLRA ........................................................................................ 17

        (3)    Deceit ....................................................................................... 19

        (4)    FDUTPA ................................................................................... 20

        (5)    Texas DTPA ............................................................................. 21

    C.      Plaintiffs' UCL, CLRA, FAL, and FDUTPA Claims are Also Barred by the First Amendment .......................................................................... 24

DOCUMENT PREPARED
ON RECYCLED PAPER

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

(1)   Legal Standard for Commercial Speech .......................................24

(2)   Plaintiffs' UCL, CLRA, FAL, and FDUTPA Claims Must be Dismissed Because They Target SeaWorld's Non Commercial Speech .........................................................................................25

D.   The CLRA Claim (and UCL Claim Based on it) Must be Dismissed with Prejudice Because SeaWorld Tickets are Outside the Scope of the CLRA ..............................................................................................28

E.   The Unjust Enrichment Class Claims Must be Dismissed Because, as a Matter of Law, they are Incapable of Class Treatment .........................30

V.   CONCLUSION ............................................................................................31

1

2

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 Page(s)

Animal Legal Defense Fund v. Mendes, 160 Cal.App.4th 136 (2008)........ 15, 16, 17

Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812 (Tex. 1997) ................................................................................................ 22

Asghari v. Volkswagen Grp. of Am., Inc., 42 F. Supp. 3d 1306 (C.D. Cal. 2013) ................................................................................... 4, 11

Bates v. United Parcel Serv., 511 F.3d 974 (9th Cir. 2007) .................................... 11

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ........................................ 6, 13, 14

Beijing Tong Ren Tang (USA) Corp. v. TRT USA Corp., 2010 WL 890048 (N.D. Cal. Mar. 8, 2010) ........................................................... 7

Bernardo v. Planned Parenthood Fed'n of Am., 115 Cal.App.4th 322 (2004)................................................................................. 25, 26, 27, 28

Berry v. Am. Express Publ'g, Inc., 147 Cal.App.4th 224 (2007) ............................ 29

Bldg. Permit Consultants, Inc. v. Mazur, 122 Cal.App.4th 1400 (2004)................. 19

Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60 (1983).................... 24, 25, 26, 27

Boling v. Trendwest Resorts, 2005 WL 1186519 (Cal. Ct. App. May 19, 2005)................................................................................................. 28

Boone v. S&F Mgmt. Co., 2009 WL 3049309 (Cal. Ct. App. Sept. 24, 2009) ................................................................................................. 18, 19

Bower v. AT&T Mobility, 196 Cal.App.4th 1545 (2011) ...................................... 18

Branca v. Nordstrom, Inc., 2015 WL 1841231 (S.D. Cal. Mar. 20, 2015) ................................................................................................... 18

Burns v. Tristar Prod., Inc., 2014 WL 3728115 (S.D. Cal. July 25, 2014) ................................................................................................... 13

Canard v. Bricker, 2015 WL 846997 (N.D. Cal. Feb. 25, 2015) .............................. 7

Charles v. City of Los Angeles, 697 F.3d 1146 (9th Cir. 2012) .............................. 25

City of Los Angeles v. Lyons, 461 U.S. 95 (1983)................................................. 11

DOCUMENT PREPARED ON RECYCLED PAPER

*In re ConAgra Foods, Inc.*, -- F. Supp. 3d --, 2015 WL 1062756 (C.D. Cal. Feb. 23, 2015) ............................................................ 31

*Davis v. Powertel, Inc.*, 776 So. 2d 971 (Fla. Dist. Ct. App. 2000) .......................... 4

*EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp.*, 711 F. Supp. 2d 1074 (C.D. Cal. 2010) ............................................................ 4

*Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843 (N.D. Cal. 2012) ...................... 9

*Ervine v. Desert View Reg'l Med. Ctr. Holdings*, 753 F.3d 862 (9th Cir. 2014) ............................................................ 11

*Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844 (Tex. App. 2005) ...................... 22, 23

*Fairbanks v. Superior Court*, 46 Cal.4th 56 (2009) ............................................ 29, 30

*I.B. ex rel. Fife v. Facebook, Inc.*, 905 F. Supp. 2d 989 (N.D. Cal. 2012) ............................................................ 30

*First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765 (1978).................................. 28

*First v. Allstate Ins. Co.*, 222 F. Supp. 2d 1165 (C.D. Cal. 2002) .......................... 20

*Fladeboe v. Am. Isuzu Motors*, 150 Cal.App.4th 42 (2007)................................... 19

*Frenzel v. AliphCom*, 76 F. Supp. 3d 999 (N.D. Cal. Dec. 29, 2014) ............ 5, 6, 12

*Friedman v. Am. Guardian Warranty Servs.*, 837 So. 2d 1165 (Fla. Dist. Ct. App. 2003) ............................................................ 9

*Garrison v. Louisiana*, 379 U.S. 64 (1964)............................................................ 28

*In re Gilead Sci's Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) ................................. 13

*Gorran v. Atkins Nutritionals, Inc.*, 279 Fed. Appx. 40 (2d Cir. 2008) ............ 24, 26

*Guzman v. Bridgepoint Ed., Inc.*, 2011 WL 4964970 (S.D. Cal. Oct. 19, 2011)............................................................ 19

*Herron v. Best Buy Co. Inc.*, 924 F. Supp. 2d 1161 (E.D. Cal. 2013) ................ 9, 10

*Hodgers-Durgin v. De La Vina*, 199 F.3d 1037 (9th Cir. 1999) .............................. 12

Holland v. Thompson, 338 S.W.3d 586 (Tex. App. 2010) ........................................ 9

Kearns v. Ford Motor Co., 567 F.3d 1120 (9th Cir. 2009) ...................................... 4

Kwikset Corp. v. Superior Court, 51 Cal. 4th 310 (2011) ......................... 14, 15, 17

Lazar v. Superior Court, 12 Cal.4th 631 (1996) .................................................... 19

Lazebnik v. Apple, Inc., 2014 WL 4275008 (N.D. Cal. Aug. 29, 2014) ................ 29

Lochabay v. Sw. Bell Media, Inc., 828 S.W.2d 167 (Tex. App. 1992) .................. 22

Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992) ............................................ 11

Machado v. Machado, 66 Cal.App.2d 401 (1944) ................................................. 20

Marolda v. Symantec Corp., 672 F. Supp. 2d 992 (N.D. Cal. 2009) ................. 3, 10

Mason v. Nature's Innovation, 2013 WL 1969957 (S.D. Cal. May 13,
    2013) ................................................................................................................. 13

Matheus v. Sasser, 164 S.W.3d 453 (Tex. App. 2005) .......................................... 23

Mattel, Inc. v. MCA Records, 296 F.3d 894 (9th Cir. 2002) ................................. 26

Maya v. Centex Corp., 658 F.3d 1060 (9th Cir. 2011) .......................................... 11

McMahon v. Take-Two Interactive Software, 2014 WL 324008 (C.D.
    Cal. Jan. 29, 2014) ........................................................................................... 30

Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097 (9th Cir.
    2008) ................................................................................................................. 13

Meyer v. Sprint Spectrum, L.P., 45 Cal.4th 634 (2009) ........................................ 18

Navarro v. Block, 250 F.3d 729 (9th Cir. 2001) ................................................... 13

Navistar Int'l Trans. Corp. v. State Bd. of Equalization, 8 Cal.4th 868
    (1994) ............................................................................................................... 28

New.Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090 (C.D. Cal. 2004) ...................... 24

New York Times v. Sullivan, 376 U.S. 254 (1964) ............................................... 28

Noll v. eBay, Inc., 282 F.R.D. 462 (N.D. Cal. 2012) ............................................. 4

O'Shea v. Littleton, 414 U.S. 488 (1974) .............................................................. 11

DOCUMENT PREPARED
ON RECYCLED PAPER

*Omni USA, Inc. v. Parker-Hannifin Corp.*, 798 F. Supp. 2d 831 (S.D. Tex. 2011) ............................................................................... 3

*Oxina v. Lands' End*, 2015 WL 4272058 (S.D. Cal. June 19, 2015) ...................... 12

*Palestini v. Homecomings Fin., LLC*, 2010 WL 3339459 (S.D. Cal. Aug. 23, 2010) ............................................................................... 30

*Papasan v. Allain*, 478 U.S. 265 (1986) ................................................... 13

*Petitt v. Celebrity Cruises, Inc.*, 153 F. Supp. 2d 240 (S.D.N.Y. 2001) ................. 21

*Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066 (S.D. Cal. 2011) ............................................................................ 4, 7, 17

*Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909 (N.D. Cal. 2013) ............................ 8

*Piscitelli v. Friedenberg*, 87 Cal.App.4th 953 (2001) ................................... 20

*Reddy v. Litton Indus., Inc.*, 912 F.2d 291 (9th Cir. 1990) .............................. 14

*Rollins, Inc. v. Butland*, 951 So.2d 860 (Fla. Dist. Ct. App. 2006) ................. 20, 21

*Romero v. Flowers Bakeries*, 2015 WL 2125004 (N.D. Cal. May 6, 2015) ............................................................................... 3

*Rosales v. FitFlop USA*, 882 F. Supp. 2d 1168 (S.D. Cal. 2012) ........................ 15

*Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777 (9th Cir. 2012) ................... 8

*Silcox v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 7335741 (S.D. Cal. Dec. 22, 2014) ............................................................................. 30

*Small v. Fritz Co.*, 30 Cal.4th 167 (2003) ............................................. 19

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942 (S.D. Cal. 2014) ................................................. 21, 23

*Speyer v. Avis Rent a Car Sys.*, 415 F. Supp. 2d 1090 (S.D. Cal. 2005) .................. 5

*In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ............................................................................ 7

*Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313 (M.D. Fla. 2002) ......................... 3

*Stutzman v. Armstrong*, 2013 WL 4853333 (E.D. Cal. Sept. 10, 2013) ........ 24, 25, 26, 27

DOCUMENT PREPARED ON RECYCLED PAPER

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

<u>Turkalj v. Entra Default Solutions, LLC</u>, 2015 WL 1535545 (N.D. Cal. Apr. 6, 2015) ................................................................................................. 6

<u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097 (9th Cir. 2003) ............................. 5

<u>Wells Fargo Bank, N.A. v. FSI, Fin. Sol., Inc.</u>, 196 Cal.App.4th 1559 (2011) .............................................................................................................. 20

**Rules and Statutes**

Cal. Bus & Prof. Code § 17204 ............................................................................... 14

Cal. Bus & Prof. Code § 17535 ............................................................................... 14

Cal. Civ. Code § 1761(a) ......................................................................................... 28

Cal. Civ. Code § 1761(b) ......................................................................................... 29

Cal. Civ. Code § 1770 ...................................................................................... 17, 28

Cal. Civ. Code § 1780(a) ......................................................................................... 17

Cal. Civ. Code § 1709 ............................................................................................. 19

CLRA .............................................................................................................. *passim*

FAL ................................................................................................................. *passim*

Federal Rule of Civil Procedure 9(b) .............................................................. *passim*

Federal Rule of Civil Procedure 12(b)(1) ............................................................... 11

Federal Rule of Civil Procedure 12(b)(6) ............................................................... 13

Fla. Stat. § 501.211(2) ............................................................................................ 20

Tex. Bus. & Com. Code § 17.45(11) ...................................................................... 22

Tex. Bus. & Com. Code § 17.50(a) .................................................................... 4, 22

UCL ................................................................................................................ *passim*

Document Prepared on Recycled Paper

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

## I.     INTRODUCTION

Despite purportedly being brought on behalf of consumers under consumer protection statutes, this case is not about remedying consumer deception.  It is about Plaintiffs' desire to control the public debate about animals in captivity. Plaintiffs (who do not purport to be scientists or killer whale experts) shout their anti-captivity views from the rooftops, but sue SeaWorld for statements that rest on actual scientific facts.  Plaintiffs have tried to shoehorn their philosophical disagreements with SeaWorld into the confines of California, Florida, and Texas's consumer protection statutes, but the pieces simply do not fit.  Those statutes were meant to protect consumers from false advertising of consumer goods and services, and not – as Plaintiffs seek – to silence those with whom the consumer disagrees.

Plaintiffs allege that SeaWorld made statements about the well-being of its killer whales, that Plaintiffs bought tickets to SeaWorld, and that Plaintiffs now believe SeaWorld's statements were false or misleading (or were true, but that SeaWorld omitted other statements Plaintiffs believe it should have made) in violation of California's Unfair Competition Law (UCL), Consumers Legal Remedies Act (CLRA), False Advertising Law (FAL), and deceit statute; Florida's unfair competition law; Texas's unfair competition law; and that this constitutes unjust enrichment.  Plaintiffs purport to represent three nationwide classes – those that purchased tickets to the San Diego, Orlando, and San Antonio parks, respectively – in the four years prior to the filing of the original complaint.  First Consolidated Amended Complaint (FAC) ¶ 283.

The real facts will show that SeaWorld made no false statements about its killer whales.  But even assuming the truth of every alleged "fact" in the FAC, as the Court must do under Rule 12, the FAC still must be dismissed in its entirety, for multiple reasons.  <u>First</u>, having chosen to pursue a consumer fraud theory, Plaintiffs have the burden of pleading their claims with the specificity required by Fed. R. Civ. P. 9(b).  They do not come close to meeting those requirements.   All of

Plaintiffs' claims fail because they are unable to allege with any specificity what statements they relied upon when purchasing their SeaWorld tickets, or when or how they purportedly learned that those statements were false. Plaintiffs also fail to allege any facts establishing that SeaWorld was under a duty to disclose any purportedly concealed information, relying instead on generalized conclusions that would be insufficient even under the more liberal notice pleading standard, let alone the heightened pleading standard applicable here.

Second, Plaintiffs' requests for injunctive relief must be dismissed because Plaintiffs do not (and cannot) demonstrate a threat of repeated injury. Plaintiffs allege that their "injury" is the money they spent on their SeaWorld tickets, but they affirmatively plead that they would not have bought the tickets had they known what they now believe to be the "true facts." Now knowing these purported "true facts," Plaintiffs will not purchase future SeaWorld tickets. As such, they have pled themselves out of court – they cannot establish the threat of repeated injury required for Article III standing to seek injunctive relief.

Third, all of Plaintiffs' statutory causes of action (UCL, CLRA, FAL, Deceit, FDUTPA, and Texas DTPA) fail to state a claim upon which relief can be granted because each statute requires some injury or damages caused by a misrepresentation about the item purchased that the consumer relied upon. This makes sense in the context of a typical consumer protection claim (e.g., the product was labeled "organic" but was not, or was advertised as "all natural" but contained artificial ingredients). Here, Plaintiffs make no such claim. The items Plaintiffs purchased were SeaWorld tickets, yet Plaintiffs do not and cannot plead any misrepresentation made about the tickets (let alone that they relied on any such statements to their detriment). Plaintiffs try to use these consumer protection statutes as a sword to attack a company to which they have an ideological objection, but the statutes do not allow this. To have standing for a UCL, CLRA, FAL, deceit, FDUTPA, or Texas DTPA claim, Plaintiffs must have an injury that arose from a

1  misrepresentation about the item they purchased; here, there is none.

2      Fourth, the First Amendment bars Plaintiffs' UCL, CLRA, FAL, and
3  FDUTPA claims.  Those statutes only apply to regulate commercial speech.  Yet
4  the statements about which Plaintiffs seek to impose liability (to the extent this is
5  decipherable) are all noncommercial.  They are not advertisements.  They do not
6  purport to sell any product.   They are educational statements setting forth
7  SeaWorld's side of the debate about killer whale captivity.  Plaintiffs wish to freely
8  disseminate their views about the well-being of SeaWorld's whales, but sue
9  SeaWorld for expressing its view.  The First Amendment bars this.

10      Fifth, the CLRA claim (and the UCL "unlawful" claim based on it) fail
11  because the statute only applies to transactions involving "goods" or "services," and
12  SeaWorld tickets are neither.

13      Finally, the unjust enrichment class claim fails because, as a matter of law,
14  such a claim is not susceptible to class treatment.

15  **II.   THE FAC MUST BE DISMISSED BECAUSE PLAINTIFFS HAVE**
16  **FAILED TO ALLEGE THEIR CLAIMS WITH THE REQUISITE**
    **LEVEL OF SPECIFICITY**

17      The entirety of the FAC sounds in fraud.  Plaintiffs allege that SeaWorld
18  fraudulently deceived the public through a campaign of both false statements and
19  material omissions regarding its killer whales.  Consequently, all of Plaintiffs'
20  claims are subject to the heightened pleading requirements of Federal Rule of Civil
21  Procedure 9(b) (Rule 9(b)).  Marolda v. Symantec Corp., 672 F. Supp. 2d 992, 1004
22  (N.D. Cal. 2009) (holding that claims under UCL, CLRA, and FAL are subject to
23  Rule 9(b) requirements); Stires v. Carnival Corp., 243 F. Supp. 2d 1313, 1322
24  (M.D. Fla. 2002) (holding that plaintiff's "FDUTPA claim should be plead with
25  particularity, and as plead, is insufficient."); Omni USA, Inc. v. Parker-Hannifin
26  Corp., 798 F. Supp. 2d 831, 836 (S.D. Tex. 2011) ("Claims alleging violations of
27  the . . . [Texas] Deceptive Trade Practices Act . . . are subject to the requirements of
28  Rule 9(b)."); Romero v. Flowers Bakeries, 2015 WL 2125004, at *9 (N.D. Cal.

May 6, 2015) (dismissing unjust enrichment claim for failure to satisfy Rule 9(b)).

### A.  Legal Standard

Rule 9(b) provides that: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  To satisfy this standard, "averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged.  A plaintiff must set forth more than the neutral facts necessary to identify the transaction.  The plaintiff must set forth what is false or misleading about a statement and why it is false." Peviani v. Natural Balance, Inc., 774 F. Supp. 2d 1066, 1071 (S.D. Cal. 2011) (internal citations omitted, emphasis added).  "To satisfy Rule 9(b), Plaintiff must [also] state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation."  EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp., 711 F. Supp. 2d 1074, 1085 (C.D. Cal. 2010) (emphasis added).  This heightened pleading standard also applies to allegations of reliance.  Noll v. eBay, Inc., 282 F.R.D. 462, 468 (N.D. Cal. 2012) ("A plaintiff must plead reliance on alleged misstatements with particularity" by alleging facts of sufficient specificity to allow a court to infer that the misrepresentations induced plaintiffs to pay for products or services) (emphasis added); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1125-26 (9th Cir. 2009) (specificity requirement applies to allegations of reliance).[2]

Similarly, claims for nondisclosure, as a species of fraud, must be pled with the particularity required under Rule 9(b).  Kearns, 567 F.3d at 1127; see also Asghari v. Volkswagen Grp. of Am., Inc., 42 F. Supp. 3d 1306, 1325 (C.D. Cal. 2013) ("a plaintiff alleging fraudulent omission or concealment must still plead the

---

[2] Reliance is required for all of Plaintiffs' claims other than the FDUTPA.  See pp. 14, 18, and 19, infra for California claims; Tex. Bus. & Com. Code § 17.50(a)(1)(B) (Texas DTPA requires that plaintiff "relied" on the deceptive practice to his detriment); Davis v. Powertel, Inc., 776 So. 2d 971, 973 (Fla. Dist. Ct. App. 2000) (party asserting FDUTPA claim need not show actual reliance).

claim with particularity.").

Where, as here, "an entire complaint … is grounded in fraud and its allegations fail to satisfy the heightened pleading requirements of Rule 9(b), a district court may dismiss the complaint[.]"  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).

### B. Plaintiffs Do Not Plead Specific Facts Sufficient to State a Claim for Actionable Misrepresentations

While Plaintiffs' Complaint is rife with allegedly false statements made by SeaWorld regarding the health, safety and care of its killer whales, Plaintiffs do not allege what statements they heard, when they heard them, what statements they relied upon, or when or how they learned those statements were false, all of which are fatal to their claims.

Indeed, with the exception of Hall, discussed below, Plaintiffs do not even allege that any of them actually saw a single one of SeaWorld's statements.[3] Instead, when setting forth the allegations specific to them, Plaintiffs simply allege that SeaWorld marketed its products generally throughout the country prior to Plaintiffs' purchasing their tickets.  See FAC ¶¶ 250-272.  An allegation that SeaWorld markets its products to the public is not an allegation that Plaintiffs were actually exposed to such marketing – let alone an allegation that provides the specifics required by Rule 9(b).  Frenzel v. AliphCom, 76 F. Supp. 3d 999, 1014 (N.D. Cal. Dec. 29, 2014) (dismissing UCL, CLRA, and FAL claims because plaintiff did "not allege[] with sufficient detail what representations he reviewed, when he first reviewed them, or which ones he relied on in deciding to purchase [the product].").

---

[3] Although Plaintiffs assert the FAC claim on behalf of themselves *and* the unnamed class members, in ruling on this motion to dismiss, the Court should only consider the allegations made by the named Plaintiffs.  Speyer v. Avis Rent a Car Sys., 415 F. Supp. 2d 1090, 1094 (S.D. Cal. 2005) (when considering a motion to dismiss, the court only considers the claims of the named plaintiffs).

DOCUMENT PREPARED ON RECYCLED PAPER

Nor do Plaintiffs allege what statements they relied on to their detriment. Instead, they vaguely allege that around the time they purchased their tickets, SeaWorld was misleadingly marketing its parks throughout the country and that they and others "relied upon this marketing to their detriment and deception." FAC, ¶¶ 253 (Hall), 259 (Danner), 263 (Simo), 267 (Kuhl), 271 (Browne).  The allegations of reliance specific to the claims are equally deficient.  There, Plaintiffs conclude that "Plaintiffs and the Class have relied upon SeaWorld's campaign of misrepresentations and material omissions regarding the treatment and condition of its captive orcas …" or use similarly conclusory allegations.  Id., at ¶¶ 296, 324. This is precisely the type of "formulaic recitation of the elements of a cause of action" prohibited by the Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Such allegations could not survive a motion to dismiss under Rule 8, let alone the heightened 9(b) standard applicable here.  Turkalj v. Entra Default Solutions, LLC, 2015 WL 1535545, at *5 (N.D. Cal. Apr. 6, 2015) ("[G]eneralized and conclusory allegation[s] of reliance [are] insufficient to sustain [a] fraud claim.").  Courts have dismissed fraud-based consumer protection claims where, as here, plaintiffs broadly pled reliance without providing specifics.  E.g., Frenzel, 76 F. Supp. 3d at 1014 (dismissing UCL, CLRA, and FAL claims for lack of specificity in pleading reliance where plaintiff alleged generally that he reviewed the defendant's "marketing materials and representations" and purchased the product "based on those representations.").

With respect to plaintiff Hall, the allegations again fail to satisfy Rule 9(b). Hall alleges that prior to purchasing her tickets, she heard "(false) statements and material omissions regarding [SeaWorld trainer Dawn Brancheau's] death, including that Brancheau slipped into the tank and later that her death was caused by her pony tail being in the water."  FAC ¶ 250.  With respect to the statement that Ms. Brancheau slipped into the tank, Plaintiff admits that the statement was made by the Orange County Sheriff's Office, not SeaWorld.  Id., ¶ 170.  This alleged

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

statement by a third party cannot be the basis for misrepresentation claims against SeaWorld.  In alleging the second statement (that Ms. Brancheau's death was caused by her pony tail being in the water), Hall fails to properly allege who made the statement, when it was made, and when and how she heard it.  Id., ¶ 250.  See e.g., Beijing Tong Ren Tang (USA) Corp. v. TRT USA Corp., 2010 WL 890048, at *3 (N.D. Cal. Mar. 8, 2010) (dismissing claims that failed to allege the "who, what, when, where, and how of the misconduct charged.").

Hall also fails to allege why either of the alleged statements are false or misleading, simply concluding (in a parenthetical) that they are false.  This is manifestly insufficient under Rule 9(b).  Peviani, 774 F. Supp. 2d at 1071 ("The plaintiff must set forth what is false or misleading about a statement, and why it is false.") (emphasis added); Canard v. Bricker, 2015 WL 846997, at *5 (N.D. Cal. Feb. 25, 2015) ("Mere conclusory allegations of the statements' falseness are insufficient.").  Hall then alleges that once she did her own research she uncovered the purported "true facts."  FAC ¶¶ 254, 255.  However, she fails to specifically identify the "true facts" she uncovered, when she uncovered those facts, the sources of that information and when that information was first available to the public, all of which permit the Court to infer that the alleged statements were not false at all. See e.g., In re Splash Tech. Holdings, Inc. Sec. Litig., 2000 WL 1727405, at *6 (N.D. Cal. Sept. 29, 2000) (dismissing claims because "[p]laintiffs have failed to plead the falsity of these statements when made with sufficient particularity.").

While Hall does allege that she relied upon SeaWorld's allegedly false statement regarding Ms. Brancheau's death, these allegations are not sufficient. Hall does not allege how she relied on the statement, pleading only that subsequent to hearing SeaWorld's explanation regarding the death, she purchased tickets to SeaWorld.  Moreover, Hall's defective allegations regarding reliance reveal another fatal flaw with her claims – the lack of any causal connection between the alleged misrepresentations regarding Ms. Brancheau's death (on which she purportedly

1  relied) and her claimed injuries.  See e.g., Sateriale v. R.J. Reynolds Tobacco Co.,

2  697 F.3d 777, 793 (9th Cir. 2012) ("Given the absence of an alleged causal

3  connection between the alleged misrepresentations and the plaintiffs' injuries, the

4  district court properly dismissed the UCL claim."); Pirozzi v. Apple, Inc., 966 F.

5  Supp. 2d 909, 917 (N.D. Cal. 2013) ("there must be a causal connection between

6  the injury and the conduct complained of – the injury has to be fairly traceable to

7  the challenged action of the defendant …").

8       Hall alleges that after purchasing tickets to SeaWorld in 2011 and 2012, she

9  watched the film *Blackfish*, conducted "her own further research regarding the

10  treatment and conditions of Orcas at SeaWorld" and concluded that had she known

11  the purported "true facts" regarding SeaWorld's alleged "improper treatment of

12  orcas" she would not have purchased those tickets.  FAC, ¶¶ 254, 255.  Hall does

13  not allege, however, that her independent research "regarding the treatment and

14  conditions of orcas at SeaWorld" (id., ¶ 254) had anything to do with the

15  mechanism of Ms. Brancheau's death.  Accordingly, there is no allegation that her

16  discovery of the "true facts" regarding SeaWorld's alleged "improper treatment of

17  orcas" had anything to do with her alleged injury – her decision to buy tickets to

18  SeaWorld based on the representations regarding Ms. Brancheau's death.

19  **C.**    **Plaintiffs Do Not Plead Specific Facts Sufficient to State a Claim**
   **for Actionable Non-Disclosure**

20

21       To the extent that Plaintiffs' claims are based on alleged omissions which

22  SeaWorld was obligated to disclose, their claims fail for failure to plead the source

23  of the duty or the allegedly omitted information with the required level of

24  specificity.  Under California, Florida and Texas law, a plaintiff cannot state a

25  claim for actionable non-disclosure without alleging that the defendant had a duty

26  to speak.  Such a duty can arise (1) from a fiduciary or other special relationship

27  between the parties; (2) when the defendant has exclusive knowledge of material

28  facts not reasonably accessible to the plaintiff; (3) when the defendant actively

conceals a material fact from the plaintiff; or (4) when the defendant misleads the plaintiff by making a partial representation.  Elias v. Hewlett-Packard Co., 903 F. Supp. 2d 843, 856 (N.D. Cal. 2012); Friedman v. Am. Guardian Warranty Servs., 837 So. 2d 1165, 1166 (Fla. Dist. Ct. App. 2003) (recognizing that duty to disclose can arise from a fiduciary relationship or partial representation); Holland v. Thompson, 338 S.W.3d 586, 598 (Tex. App. 2010) (recognizing that duty to disclose can arise from a fiduciary relationship or partial representation).

> (1)     Plaintiffs Fail to Sufficiently Allege a Duty by SeaWorld to Disclose the Allegedly Withheld "True" Facts

In attempting to allege SeaWorld's purported duty, Plaintiff simply concludes that the duty "arises from: (a) its superior and exclusive knowledge of these material facts, which were not known or reasonably accessible to Plaintiff and the Class; (b) its active concealment of these material facts; and (c) its marketing and sale of SeaWorld products, which is likely to mislead consumers, and has misled consumers, absent full disclosure of the material facts at issue."  FAC, ¶¶ 301 (UCL), 311 (CLRA), 335 (Deceit), 348 (FDUTPA), 361 (Texas DTPA). None of these conclusory allegations satisfies Rule 9(b).

First, Plaintiffs' allegation that SeaWorld has superior and exclusive knowledge of the purportedly undisclosed facts regarding its care of killer whales is simply a recitation of the legal standard, which is nothing more than a "generalized allegation" "insufficient to defeat a dismissal motion." Herron v. Best Buy Co. Inc., 924 F. Supp. 2d 1161, 1175 (E.D. Cal. 2013).  Plaintiffs do not identify the specific facts that were allegedly within SeaWorld's exclusive knowledge and would have been material to Plaintiffs.  Moreover, Plaintiffs' own allegations contradict their claim that SeaWorld had exclusive knowledge of these unidentified facts because they plead that they were able to conduct research through which they learned the purported "true facts" from sources other than SeaWorld.  FAC, ¶¶ 254-55, 258, 262, 266, 270; see also, Herron, 924 F. Supp. 2d at 1175-76 (rejecting allegations of

1    exclusive knowledge based in part on article discussing the precise deficiencies that

2    plaintiff complained were within defendants' exclusive knowledge).

3         Second, Plaintiffs' allegations that SeaWorld's duty arose from its active

4    concealment of material facts is equally insufficient.  Again, Plaintiffs fail to allege

5    any actions taken by SeaWorld to actively conceal any of the alleged "true facts"

6    regarding its care of killer whales, instead simply concluding that SeaWorld has

7    done so.   This is not enough.   <u>Herron</u>, 924 F. Supp. 2d at 1176 ("[m]ere

8    nondisclosure does not constitute active concealment.  Rather, to state a claim for

9    active concealment, Plaintiff must allege specific 'affirmative acts on the part of the

10   [D]efendants in hiding, concealing or covering up the matters complained of.'")

11   (internal cite omitted).

12        Finally, Plaintiffs fail to specifically identify any partial disclosures made <u>to</u>

13   <u>them</u> which obligated SeaWorld to make additional disclosures <u>to them</u>, or what

14   facts should have been disclosed in connection with the alleged partial disclosures.

15   Plaintiffs' general allegations fall well short of what is necessary to allege a duty to

16   disclose.  <u>Herron</u>, 924 F. Supp. 2d at 1175-76 (plaintiff could not state a claim

17   based on a partial omission because plaintiff had not specified any partial

18   representations).

19              (2)   <u>Plaintiffs Fail to Sufficiently Allege the Material Information</u>
                      <u>Which SeaWorld Purportedly Concealed or Omitted</u>
20
          Assuming Plaintiffs could overcome their failure to plead SeaWorld's

21
     purported duty, their pleading still fails to state a claim based on non-disclosure or
22
     omission of material facts.   "[T]o plead the circumstances of omission with
23
     specificity, plaintiff must describe the content of the omission and where the
24
     omitted information should or could have been revealed, as well as provide
25
     representative samples of advertisements, offers, or other representations that
26
     plaintiff relied on to make her purchase and that failed to include the allegedly
27
     omitted information."  <u>Marolda</u>, 672 F. Supp. 2d at 1002; <u>Asghari</u>, 42 F. Supp. 3d
28

at 1325 (same).  The only representations that any of the Plaintiffs allege that they were directly exposed to were allegedly false statements regarding the circumstances of Ms. Brancheau's death that were heard by Hall.  However, Hall fails to allege what purportedly withheld information SeaWorld was obligated to disclose in connection with the alleged "partial" statements about Ms. Brancheau's death, or where such withheld information should/could have been revealed.

## III.   PLAINTIFFS' CLAIMS FOR INJUNCTIVE RELIEF MUST BE DISMISSED FOR LACK OF ARTICLE III STANDING BECAUSE PLAINTIFFS CANNOT DEMONSTRATE A THREAT OF REPEATED INJURY

### A.   Legal Standard

"[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)."  Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011).  Article III standing has a three-element "irreducible constitutional minimum":  (1) injury in fact; (2) causation; and (3) redressability.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

"Standing must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties."  Bates v. United Parcel Serv., 511 F.3d 974, 985 (9th Cir. 2007).  To have constitutional standing for injunctive relief, Plaintiffs must demonstrate not only that they have "suffered or [are] threatened with a concrete and particularized legal harm," but also that there is "'a sufficient likelihood that [they] will again be wronged in a similar way.'"  Id. (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983)).  In other words, to seek injunctive relief, a plaintiff "must establish a 'real and immediate threat of repeated injury.'"  Id. (emphasis added) (quoting O'Shea v. Littleton, 414 U.S. 488, 496 (1974)); Ervine v. Desert View Reg'l Med. Ctr. Holdings, 753 F.3d 862, 868 (9th Cir. 2014) ("[I]t is not the presence or absence of a past injury that determines Article III standing to seek injunctive relief; it is the imminent prospect of future injury.").

In a class action, "[u]nless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief." Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1045 (9th Cir. 1999).

**B.    Plaintiffs Cannot Meet Their Burden of Demonstrating a Threat of Repeated Injury Because They Do Not Intend to Purchase Future SeaWorld Tickets**

Plaintiffs seek injunctive relief as a remedy for their UCL, CLRA, FAL, FDUTPA, and Texas DTPA claims.  FAC ¶¶ 304, 314, 326, 350, 364.  Their purported injury is the money they spent on SeaWorld tickets.  However, they lack Article III standing for injunctive relief because there is no real and immediate threat that they will again buy SeaWorld tickets.

"[T]o demonstrate standing in a consumer class action such as this one, the named plaintiff must allege that he intends to purchase the produc[t] at issue in the future." Frenzel, 76 F. Supp. 3d at 1015 (internal quote omitted, emphasis added). No named plaintiff has alleged that they intend to purchase SeaWorld tickets in the future.  To the contrary, they specifically allege that had they "known the truth about the condition and treatment of SeaWorld's captive orcas, they would not have paid the purchase price for SeaWorld products." E.g., FAC ¶ 302.  Now they know their "truth."  Based on their own pleading, then, they will never again purchase SeaWorld tickets.  Indeed, Plaintiff Hall has affirmatively pled that she has stopped going to SeaWorld and now has "elected to take her grandchildren to LegoLand and other amusement parks nearby."  FAC ¶ 256.  Thus, not only is there no "real and immediate" threat of repeated injury, such injury is impossible, and their requests for injunctive relief must be dismissed.  See, e.g., Oxina v. Lands' End, 2015 WL 4272058, at *7 (S.D. Cal. June 19, 2015) (dismissing injunctive relief claims for lack of Article III standing where the plaintiff did not "allege that she is likely to purchase the [product] again, or that she is still deceived by the alleged misrepresentation on Defendant's website" and thus failed "to allege that there is any likelihood" that she "will be wronged in a similar way in the future."); Burns v.

1  Tristar Prod., Inc., 2014 WL 3728115, at *3 (S.D. Cal. July 25, 2014) (dismissing

2  injunctive relief claims for lack of Article III standing where plaintiff did not allege

3  that she intended to purchase the product again in the future and instead

4  "emphasize[d] multiple times in her complaint that had she known the quality of the

5  product … she would not have purchased [it]."); Mason v. Nature's Innovation,

6  2013 WL 1969957, at *5 (S.D. Cal. May 13, 2013) (dismissing injunctive relief

7  claims for lack of Article III standing where it was "apparent that Plaintiff has no

8  intention of buying Defendant's [] product again the future.").

9  **IV.   ALL OF PLAINTIFFS' CLAIMS FAIL TO STATE A CLAIM UPON
10        WHICH RELIEF CAN BE GRANTED**

11        **A.   Legal Standard**

12        A motion to dismiss for failure to state a claim under Federal Rule of Civil

13  Procedure 12(b)(6) "tests the legal sufficiency of a claim."  Navarro v. Block, 250

14  F.3d 729, 732 (9th Cir. 2001).  A complaint should be dismissed where it "lacks a

15  cognizable legal theory or sufficient facts to support a cognizable legal theory."

16  Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008).  To

17  survive a motion to dismiss, Plaintiffs' complaint must set forth the grounds of their

18  entitlement to relief, which requires more than a "formulaic recitation of the

19  elements of a cause of action[.]"  Twombly, 550 U.S. at 555.

20        In ruling on a motion to dismiss, while a court "must take all the factual

21  allegations in the complaint as true, [it is] not bound to accept as true a legal

22  conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286

23  (1986); In re Gilead Sci.'s Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008) (The

24  court is not required "to accept as true allegations that are merely conclusory,

25  unwarranted deductions of fact, or unreasonable inferences.").  If the remaining,

26  well-pleaded factual allegations "could not raise a claim of entitlement to relief, this

27  basic deficiency should … be exposed at the point of minimum expenditure of time

28  and money by the parties and the court."  Twombly, 550 U.S. at 558 (internal quote

1 omitted).

2     When granting a motion to dismiss, the court need not grant leave to amend

3 if amendment would be futile.  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th

4 Cir. 1990).  In determining whether amendment would be futile, the court examines

5 whether the complaint could be amended to cure the defect requiring dismissal

6 "without contradicting any of the allegations of [the] original complaint."  Id.

7     **B.**    **All of Plaintiffs' Statutory Claims Fail Because Plaintiffs Do Not**

8 **Have an Economic Injury or Actual Damages Caused by Any Alleged Misrepresentation About the Items Purchased**

9     All of Plaintiffs' statutory claims fail for the simple reason that the alleged

10 misrepresentations of which they complain were not about the items they actually

11 purchased, and they have not suffered any damages as a result of any

12 misrepresentations.

13     (1)    UCL and FAL

14     For Plaintiffs to have standing under the UCL or FAL, they must

15 "(1) establish a loss or deprivation of money or property sufficient to qualify as

16 injury in fact, i.e. *economic injury*, and (2) show that that economic injury was the

17 result of, i.e., *caused by*, the unfair business practice or false advertising that is the

18 gravamen of the claim."  Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 322

19 (2011) (original emphasis); Cal. Bus & Prof. Code §§ 17204; 17535.  To establish

20 causation, Plaintiffs "must demonstrate actual reliance on the allegedly deceptive or

21 misleading statements[.]" Kwikset, 51 Cal. 4th at 326 (emphasis added).

22     Plaintiffs cannot meet either prong.  They have not alleged any

23 misrepresentation about the items they actually purchased – SeaWorld tickets.

24 Because of this, it is also impossible for them to meet the second prong – actual

25 reliance on any deceptive statement about the tickets.

26     a.  *No Economic Injury*

27     Plaintiffs' alleged "economic injury" is the price of their tickets.  But

28 Plaintiffs fail to allege any misrepresentations SeaWorld made about those tickets.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1    Plaintiffs have not alleged, for example, that the tickets were advertised as two-day
2    passes but only allowed entry for one day, or that the tickets advertised walruses but
3    walruses were not exhibited.   Plaintiffs have not alleged that the tickets were
4    advertised as allowing them to attend a show and that they were denied admittance.
5    Nor do Plaintiffs allege that they were denied entry to the park, that the facilities
6    were under construction, or that the Shamu Show did not go on as planned.

7           It may be true that in traditional product mislabeling cases a "consumer who
8    relies on a product label and challenges a misrepresentation contained therein can
9    satisfy the standing requirement of [the UCL/FAL] by alleging … that he or she
10   would not have bought the product but for the misrepresentation," Kwikset, 51 Cal.
11   4th at 330, but there must have been a misrepresentation about the product itself.
12   See Rosales v. FitFlop USA, 882 F. Supp. 2d 1168, 1174 (S.D. Cal. 2012) ("An
13   economic injury exists where a seller misrepresents a product and, had the product
14   been represented accurately, buyers would not have been willing to pay as much as
15   they did for it, or would have refused to purchase it altogether.") (emphasis added).
16   Here, Plaintiffs purchased tickets, but they do not allege that SeaWorld made any
17   misrepresentations about the tickets.

18          Where, as here, the alleged misrepresentation was not about the item actually
19   purchased, but about something related to the stream of commerce of the item,
20   statutory standing fails.   In an analogous case, Animal Legal Defense Fund v.
21   Mendes, 160 Cal.App.4th 136 (2008), consumers of milk sued calf ranchers under
22   the UCL, alleging that the ranchers violated a California Penal Code provision
23   regarding animal treatment, and had the consumers known of the alleged violation,
24   they would not have purchased the milk.[4]   The plaintiffs alleged they "suffered
25   harm and lost money as a result of purchasing dairy products that were unlawfully,

---

26
27   [4] The provision prohibits confining an animal without an "adequate exercise area,"
     and the plaintiffs alleged that the ranchers kept the calves, for up to 60 days at a
28   time, in small crates that were "not large enough to permit the cal[ves] to turn
     around or lie in a natural position."  Id. at 140.

DOCUMENT PREPARED
ON RECYCLED PAPER

1   unfairly and illegally produced." Id. at 141.

2        As in this case, the plaintiffs in Mendes made no complaints about the item

3   they actually purchased (in that case, milk):

4        "They do not allege that the milk sold to them … was physically
5        inferior to other milk.  They do not allege that respondents' treatment
         of the young calves has any negative effect on the milk produced by
6        these calves months and years later, when they are in the dairy herd.
7        And they do not allege that anyone made express representations about
         the milk, similar to express claims that dairy products are organic,
8        produced by non-hormonally enhanced cows, or produced by grass-
9        grazed cows. … Instead, the consumers' alleged injury is that they
         bought milk they otherwise would not have bought if they had thought
10       some of the producing herd may have been raised by respondents in
11       cruel conditions."

12   Id. at 145-46 (internal citations omitted).  The plaintiffs argued that they suffered an

13   economic injury "even though the milk itself was not of inferior physical quality,

14   [because] the violation of anticruelty laws in raising the calves 'tainted the dairy

15   products sent into the stream of commerce.'"  Id. at 147.

16        The California Court of Appeals rejected the plaintiffs' argument, and

17   affirmed dismissal for lack of economic injury.  It held that because the consumers

18   had received the benefit of the bargain for what they actually purchased – the milk

19   – any injury they suffered by virtue of the violation of anticruelty laws "tainting"

20   the milk was a "moral injury," not an economic one.  Id.

21        Plaintiffs' gambit here is even weaker.  They allege that when they purchased

22   their SeaWorld tickets, they assumed that SeaWorld's killer whales were happy and

23   healthy, and that they lost money because had they known what they now consider

24   to be "the truth" about the whales' treatment (which, unlike in Mendes, they do not

25   even allege violates any anticruelty or animal welfare laws), they would not have

26   bought the tickets.  FAC ¶¶ 302, 324.  But they do not allege that there was

27   anything inferior about what they purchased – the tickets for admission to the park.

28   Notably, they do not allege that SeaWorld's treatment of the whales had any effect

on the Shamu show.   They paid for SeaWorld tickets and received SeaWorld tickets.[5]   As Mendes demonstrates, when the consumers' complaint is not about the item actually purchased, but instead about something in the stream of commerce that allegedly "tainted" the experience, allegations that the plaintiffs would not have purchased the ultimate product had they known the truth are insufficient.   This is, at best, a "moral injury," not an economic one, and therefore the claim is fatally flawed from the outset.

### b.   *No Reliance on Misleading Statement*

Because Plaintiffs have not alleged any misleading statements about their tickets, they do not (and cannot) allege that they relied upon any statements about those tickets, and thus fail to establish the second requirement for statutory standing.   Kwikset, 51 Cal.4th at 326 (Plaintiffs "must demonstrate <u>actual reliance on the allegedly deceptive or misleading statements</u>[.]") (emphasis added); Peviani, 774 F. Supp. 2d at 1070 ("actual reliance is required to have standing to sue under the UCL or FAL.").   Even if the allegedly deceptive statements did not have to be about the items purchased – the tickets – as set forth above, Plaintiffs still completely fail to allege reliance on any statement by SeaWorld with the specificity required by Rule 9(b).   Supra pp. 5-8 and cases cited therein.

### (2)   CLRA

The CLRA states that "[a]ny consumer who suffers any damages as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against that person[.]"   Cal. Civ. Code § 1780(a).   Some courts have interpreted the CLRA to require the same

---

[5] Plaintiffs may argue that SeaWorld made representations about the care of its whales.   But, as discussed above, Plaintiffs do not allege reliance on any particular factual statement similar to the examples in Mendes (that the milk was organic, or produced by grass-fed cows, for example).   See FAC ¶ 302 ("Plaintiffs and the Class relied on SeaWorld to make complete disclosures of all material information regarding its captive orcas.").   No factual statements are identified.

economic injury as the UCL and FAL.  See, e.g., Branca v. Nordstrom, Inc., 2015 WL 1841231, at *3 (S.D. Cal. Mar. 20, 2015) ("[T]o have standing to sue under the FAL, UCL, or CLRA, the plaintiff must allege (1) that he suffered an economic injury, and (2) that he actually relied on the purported misrepresentation.") (emphasis added).

Regardless of whether Plaintiffs' CLRA claim is analyzed with the UCL and FAL claims or separately, it fails because Plaintiffs have not suffered any damage as a result of the alleged CLRA violation.  Courts have made clear that being exposed to an unlawful practice is insufficient to establish standing.  "[T]he statute provides that in order to bring a CLRA action, not only must a consumer be exposed to an unlawful practice, but some kind of damage must result."  Meyer v. Sprint Spectrum, L.P., 45 Cal.4th 634, 641 (2009); Bower v. AT&T Mobility, 196 Cal.App.4th 1545, 1556 (2011) ("A plaintiff bringing a CLRA cause of action must not only be exposed to an unlawful practice but also have suffered some kind of damage.").

Plaintiffs may argue that they suffered "damage" in the form of the cost of their tickets.  As with their UCL and FAL claims, however, Plaintiffs fail to allege that (1) there was anything wrong with their tickets, or (2) that they relied upon any misrepresentation about the tickets, both of which are fatal to their claim.  For example, in Boone v. S&F Mgmt. Co., 2009 WL 3049309 (Cal. Ct. App. Sept. 24, 2009), the California Court of Appeals affirmed dismissal of a CLRA claim for lack of statutory standing where the plaintiff-patient sued the defendant-nursing facility, alleging that the facility falsely advertised that it provided "skilled nursing care which will meet the needs of prospective and current residents."  Id. at *1. Plaintiff-patient alleged that he "relied on these promises and representations when he signed the admissions agreement, and he lost money when he did not receive the quality of care for which he had paid."  Id.  The court held that the plaintiff lacked standing because there was "no allegation of what was deficient in the services

1   provided to [plaintiff], nor what harm he suffered for want of services[.]"  Id. at *3.

2   Similarly here, Plaintiffs have not alleged what was deficient about their tickets.

3        Plaintiffs CLRA claim also must be dismissed for failure to plead reliance for

4   the same reasons as their FAL and UCL claims.  Plaintiffs recite the same formulaic

5   refrain, FAC ¶ 312 (Plaintiffs "purchased SeaWorld products due to the material

6   omissions about the conditions and treatment of SeaWorld's captive orcas"), which

7   fails to meet Twombly's pleading standards, let alone those of Rule 9(b).  See

8   Guzman v. Bridgepoint Ed., Inc., 2011 WL 4964970, at *5 (S.D. Cal. Oct. 19,

9   2011) (dismissing CLRA claim; general allegations that plaintiff relied upon

10  general misrepresentations were insufficient where plaintiff "failed to allege

11  sufficient facts to show that she relied on any misrepresentations by

12  Defendants[.]").  See also pp. 5-8, supra, and cases cited therein.

13                     (3)    Deceit

14       California Civil Code § 1709, which states that "one who willingly deceives

15  another with intent to induce him to alter his position to his injury or risk, is liable

16  for any damage which he thereby suffers," codified the common law actions of

17  fraud and deceit.  Small v. Fritz Co., 30 Cal.4th 167, 172 (2003) (emphasis added).

18  The essential elements of the claim include "justifiable reliance" on the purported

19  misrepresentation and "resulting damage."  Lazar v. Superior Court, 12 Cal.4th

20  631, 638 (1996).   "Fraud without damage is not actionable[.]"   Bldg. Permit

21  Consultants, Inc. v. Mazur, 122 Cal.App.4th 1400, 1415 (2004) (internal quote

22  omitted, emphasis added); Fladeboe v. Am. Isuzu Motors, 150 Cal.App.4th 42, 65

23  (2007) ("Deception without resulting loss is not actionable fraud.") (internal quote

24  omitted).

25       "Under California law, a defrauded party is ordinarily limited to recovering

26  out-of-pocket damages," meaning "the difference in actual value at the time of the

27  transaction between what the plaintiff gave and what he received."  Id. at 66.  "[I]t

28  is fundamental that 'damages which are speculative, remote, imaginary, contingent,

1   or merely possible cannot serve as a legal basis for recovery.'" <u>Wells Fargo Bank,</u>
2   <u>N.A. v. FSI, Fin. Sol., Inc.</u>, 196 Cal.App.4th 1559, 1574 (2011) (quoting <u>Piscitelli</u>
3   <u>v. Friedenberg</u>, 87 Cal.App.4th 953, 989 (2001)).

4        As discussed above, what Plaintiffs purchased were tickets, and they have
5   not identified any misrepresentation about those tickets.  Their deceit claim should
6   fail on that basis alone.  It also fails for Plaintiffs' failure to plead reliance.

7        However, even if Plaintiffs could otherwise sustain a claim based on
8   statements that were not about the item they purchased, and that they did not rely
9   upon (and were not even exposed to), their deceit claim also fails for lack of actual
10  damages.  When there is no difference in value between what was received as a
11  result of the alleged fraud or deceit and what would have been received absent such
12  conduct, there has been no damage.  <u>See</u>, <u>e.g.</u>, <u>First v. Allstate Ins. Co.</u>, 222 F.
13  Supp. 2d 1165, 1173 (C.D. Cal. 2002) (fraud claim failed for lack of damages
14  where, even if contractor's qualifications were misrepresented, plaintiffs could not
15  show that their insurance claim was underpaid); <u>Machado v. Machado</u>, 66
16  Cal.App.2d 401, 405 (1944) (affirming dismissal of fraud claim because plaintiff
17  presented no evidence that the property interest he received as a result of the
18  fraudulent misrepresentation was any less valuable than the property interest he
19  would have received absent the fraud).  Plaintiffs have not alleged that there is any
20  monetary difference between the value of the tickets they received and those they
21  paid for.  There is none.  As such, their deceit claim must be dismissed.

22              (4)    <u>FDUTPA</u>

23        Where, as here, Plaintiffs seek damages under the FDUTPA, they must
24  establish actual damages.  <u>Rollins, Inc. v. Butland</u>, 951 So.2d 860, 869 (Fla. Dist.
25  Ct. App. 2006); Fla. Stat. § 501.211(2) (plaintiffs who have "suffered a loss as a
26  result of a violation" of the statute "may recover actual damages[.]").  "The
27  measure of actual damages is the difference in the market value of the product or
28  service in the condition in which it was delivered and its market value in the

1  condition in which it should have been delivered according to the contract of the

2  parties." <u>Rollins</u>, 951 So.2d at 869 (internal quote omitted).  The "FDUTPA does

3  not provide for the recovery of nominal damages, speculative losses, or

4  <u>compensation for subjective feelings of disappointment</u>."  <u>Id</u>. at 873 (emphasis

5  added).

6          Plaintiffs' FDUTPA claim must fail because they have no actual damages.

7  There is no difference in the market value of SeaWorld tickets in the condition in

8  which Plaintiffs received them and their "market value in the condition in which

9  they should have been delivered."  Plaintiffs paid for SeaWorld tickets and got

10  SeaWorld tickets.  They do not allege there was anything defective about them.

11  Where plaintiffs cannot demonstrate a concrete loss of monetary value, their

12  FDUTPA claims must be dismissed.  <u>See</u>, <u>e.g.</u>, <u>In re Sony Gaming Networks &</u>

13  <u>Customer Data Sec. Breach Litig.</u>, 996 F. Supp. 2d 942, 993 (S.D. Cal. 2014)

14  (plaintiffs' allegations that Sony made misrepresentations about online security and

15  that they would not have sent their personal information to Sony had they known

16  the truth failed to allege "actual damages" under FDUTPA because personal data

17  does not have an apparent monetary value); <u>Petitt v. Celebrity Cruises, Inc.</u>, 153 F.

18  Supp. 2d 240, 264 (S.D.N.Y. 2001) (dismissing FDUTPA claim where plaintiffs

19  who became ill on cruise alleged that the cruiseline misrepresented that its ships

20  were part of a "world-class, premium rated fleet which provided sophisticated and

21  five-star services to its passengers" when it permitted sick crew members to remain

22  on duty and interact with passengers because the injuries plaintiffs suffered were

23  not economic).  Plaintiffs' "subjective feelings" are not compensable under the

24  FDUTPA.

25                    (5)    <u>Texas DTPA</u>

26          To have standing to bring a DTPA claim, Plaintiffs must establish that they

27  are "consumers" within the meaning of the act.  "A plaintiff must meet two tests to

28  qualify as a consumer: (1) the person must have sought or acquired goods or

services by purchase or lease; and (2) <u>the goods or services purchased or leased must form the basis of the complaint</u>."   Lochabay v. Sw. Bell Media, Inc., 828 S.W.2d 167, 171-72 (Tex. App. 1992) (emphasis added) (affirming summary judgment for defendant because "the service [plaintiff] purchased did not form the basis of his complaint[.]").   As noted above, what Plaintiffs purchased were SeaWorld tickets.  But the purported statements that form the basis of the complaint are not about those tickets.  As such, Plaintiffs are not "consumers" under the DTPA, and they lack standing to bring this claim.

Plaintiffs also lack standing for an additional, and related, reason – they cannot establish the required economic damages.   Tex. Bus. & Comm. Code § 17.50(a) (plaintiffs must have suffered "economic damages or damages for mental anguish.").[6]  Economic damages are defined as "compensatory damages for pecuniary loss[.]"  Tex. Bus. & Comm. Code § 17.45(11).   Under the DTPA, a plaintiff can recover for either the "out-of-pocket" measure or the "benefit-of-the-bargain" measure of economic damages.  Everett v. TK-Taito, L.L.C., 178 S.W.3d 844, 858 (Tex. App. 2005).   "The out-of-pocket measure compensates for the difference between what the consumer paid and what he received; the benefit-of-the-bargain measure compensates for the difference between what a consumer was promised and what he received."  Id.  Damages that are too remote, too uncertain, or purely conjectural cannot be recovered.  Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 816 (Tex. 1997).

Again, given that Plaintiffs' complaints are not about the product actually purchased, it is unsurprising that they cannot establish the requisite economic damages.  They received what they paid for and what was promised – admission to SeaWorld parks.  Any injury Plaintiffs suffered is not the type that is compensable under the DTPA.  Courts have dismissed DTPA claims where, as here, plaintiffs

---

[6] Because Plaintiffs do not claim mental anguish, they must show that they suffered economic damages.

DOCUMENT PREPARED
ON RECYCLED PAPER

1   received what they paid for and what they were promised but claimed to have some
2   kind of psychological injury.  For example, in <u>Everett</u>, plaintiffs alleged that they
3   purchased vehicles with seatbelt buckles that had an unmanifested defect – the
4   seatbelt potentially could cause an injury, but had not done so for plaintiffs.  178
5   S.W. 3d at 858.  The Texas Court of Appeals affirmed dismissal of the DTPA claim
6   for lack of standing, finding that the plaintiffs had not pled facts "demonstrating the
7   type of injury that is compensable under the DTPA," because "they have received
8   the benefit of their bargain; they were promised and they received seat belt buckles
9   that latched and provided sufficient restraint."  <u>Id</u>.; <u>see also</u> <u>Matheus v. Sasser</u>, 164
10  S.W.3d 453, 463 (Tex. App. 2005) (affirming judgment for defendants on DTPA
11  claim for lack of economic damages; homebuyer did not have benefit-of-the-
12  bargain damages for misrepresentation of home's square footage because he did not
13  bargain for the price of the house based on square footage, and plaintiff's "<u>intrinsic
14  value of the property to him</u> for his personal purposes," was "irrelevant to the
15  proper measure of damages" under the DTPA) (emphasis added).  Similarly, here
16  Plaintiffs were promised and received admittance to SeaWorld parks and saw
17  Shamu Shows.  Although they plead generally that they believe SeaWorld's killer
18  whales are not as happy as whales in the wild, they have not identified any way in
19  which that affected their purchase – they do not allege that the Shamu Show was
20  unable to go on, or even that the performance was lackluster.  Any "intrinsic value"
21  of the whales' welfare to the Plaintiffs is not compensable under the DTPA.

22      To the extent Plaintiffs claim that there is somehow a monetary difference
23  between a park experience with "happy" whales and a park experience with
24  "unhappy" whales, that measure is purely conjectural, and not recoverable under
25  the DTPA.  <u>See</u>, <u>e.g.</u>, <u>In re Sony Gaming Networks & Customer Data Sec. Breach
26  Litig.</u>, 996 F. Supp. 2d at 1007-08 (dismissing DTPA claim with prejudice for lack
27  of economic damages; even if Sony's misrepresentation of the security of its online
28  services resulted in plaintiffs being more vulnerable to cyberstalking and phishing,

DOCUMENT PREPARED ON RECYCLED PAPER
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1  this would be insufficient because the DTPA does not allow plaintiffs to recover for
2  speculative or conjectural damages).

3  **C.**  **Plaintiffs' UCL, CLRA, FAL, and FDUTPA Claims are Also**
4  **Barred by the First Amendment**

5  The UCL, CLRA, and FAL "govern only commercial speech." Stutzman v.
   Armstrong, 2013 WL 4853333, at *14 (E.D. Cal. Sept. 10, 2013). "Noncommercial
6  speech is beyond their reach." Id. Accordingly, where a plaintiff's claims arise out
7  of noncommercial speech, the First Amendment bars those claims as a matter of
8  law. New.Net, Inc. v. Lavasoft, 356 F. Supp. 2d 1090, 1110 (C.D. Cal. 2004)
9  ("Lawsuits premised on [the UCL and related statutes] are subject to being stricken
10 because they are barred by the First Amendment where the speech complained of is
11 not commercial speech."); Stutzman, 2013 WL 4853333, at *19 ("UCL, FAL, and
12 CLRA claims targeting noncommercial speech fail as a matter of law."). 
13 Noncommercial speech is also beyond the reach of the FDUTPA. Gorran v. Atkins
14 Nutritionals, Inc., 279 Fed. Appx. 40, 42 (2d Cir. 2008) (per curiam) (holding that
15 FDUTPA claim was barred because the content on which the plaintiff sought to
16 premise liability was noncommercial speech).
17

18 (1)  Legal Standard for Commercial Speech

19 "The Ninth Circuit has adopted a three-pronged analysis based on Supreme
20 Court precedent to determine whether speech is commercial." Stutzman, 2013 WL
   4853333, at *15. "First, the court considers whether the publication fits within the
21 'core notion of commercial speech.' 'Core' commercial speech is 'speech which
22 does no more than propose a commercial transaction.'" Id. (quoting Dex Media
23 West, Inc. v. City of Seattle, 696 F.3d 952, 957 (9th Cir. 2012)). Second, if the
24 speech "does more than propose a commercial transaction, but contains 'mixed
25 content' – that is, both commercial and non-commercial elements" – the Ninth
26 Circuit applies the test from Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60
27 (1983), to determine if the speech should be considered commercial. Id. Under
28

1   Bolger, there is "strong support" for a conclusion that speech is commercial when:

2   (1) it is conceded to be an advertisement; (2) it refers to a specific product; and (3)

3   the speaker has an economic motive for engaging in the speech.  Bolger, 463 U.S.

4   at 66-67; Charles v. City of Los Angeles, 697 F.3d 1146, 1151 (9th Cir. 2012)

5   ("where the speech is an advertisement, the speech refers to a particular product,

6   and the speaker has an economic motivation," it is commercial).  Third, even if the

7   speech is commercial under Bolger, it can "still receive[] First Amendment

8   protection" if "the commercial aspects of the speech are 'inextricably intertwined'

9   with otherwise fully protected speech[.]"  Stutzman, 2013 WL 4853333 at *15.

10          (2)     Plaintiffs' UCL, CLRA, FAL, and FDUTPA Claims Must be

11                  Dismissed Because They Target SeaWorld's Non Commercial
                    Speech

12          Because Plaintiffs do not identify what SeaWorld statements they relied upon

13   (or even were exposed to), it is difficult to decipher what exactly Plaintiffs are suing

14   over.   However, the SeaWorld statements in the FAC (regardless of whether

15   Plaintiffs relied on them or even heard them), are noncommercial and thus not

16   subject to the UCL, CLRA, FAL, or FDUTPA.  For example:

17   • Statements about SeaWorld's respect for the bond between mothers and

18     calves (FAC ¶¶ 71, 83, 87, 92)

19   • Statements about killer whale lifespans (Id., ¶¶ 116, 117)

20   • Statements about SeaWorld's facilities (Id., ¶¶ 31, 46, 48, 93, 94)

21   • Statements about SeaWorld's research (Id., ¶¶ 41, 43, 47, 50)

22   • Statements that SeaWorld's killer whales are healthy (Id., ¶¶ 46, 94, 106)

23          None of these statements is "core" commercial speech, because they do more

24   than "propose a commercial transaction."  Bolger, 463 U.S. at 66.  In fact, none of

25   them proposes a commercial transaction at all.  Bernardo v. Planned Parenthood

26   Fed'n of Am., 115 Cal.App.4th 322, 344 (2004) (website statements that abortions

27   were as safe as childbirth did not propose a commercial transaction but rather were

28   "educational in nature and asserted [defendant's] positions on disputed scientific

1   and medical issues of public interest with which [plaintiff] strenuously disagreed.”);

2   Gorran, 279 Fed. Appx. at 41 (statements about low-carbohydrate diet in book and

3   on website were not commercial speech and thus entitled to full First Amendment

4   protection against FDUTPA claim because they were “not expressions related

5   solely to the economic interests of the speaker and its audience, but instead s[ought]

6   to communicate a particular view on health, diet, and nutrition[.]”) (internal

7   citations omitted).  Like the speech in Bernardo and Gorran, SeaWorld’s statements

8   about killer whale lifespans, health, and rearing practices are educational and set

9   forth SeaWorld’s position on the currently debated scientific issue of killer whales

10  in captivity.  Because the statements do not propose commercial transactions at all,

11  “under the Ninth Circuit’s analysis, the inquiry should end here.”  Stutzman, 2013

12  WL 4853333, at *17; Mattel, Inc. v. MCA Records, 296 F.3d 894, 906 (9th Cir.

13  2002) (“If speech is not ‘purely commercial’ – that is, if it does more than propose a

14  commercial transaction – then it is entitled to full First Amendment protection.”).

15          However, even if the statements were “mixed content” – both commercial

16  and non-commercial – such that the Bolger factors applied, the statements are not

17  “commercial” under Bolger either.  First, the statements are not advertisements;

18  they are participation in a scientific debate.  Bernardo, 115 Cal.App.4th at 345

19  (finding that statements about abortion on Planned Parenthood’s website were

20  “educational, not commercial, in nature.”).  Second, they do not refer to any

21  “product.”  None of the statements makes reference to SeaWorld tickets, or

22  merchandise sold at the parks, etc.  The first two Bolger factors thus weigh against

23  a finding that the statements are commercial.  Finally, even if SeaWorld had an

24  economic motive in making the statements, the Supreme Court, Ninth Circuit, and

25  other courts repeatedly have held that this does not make statements “commercial”

26  speech.  Bolger, 463 U.S. at 67 (economic motivation of the speaker in isolation is

27  “clearly insufficient” to make statement commercial speech); Dex Media, 696 F.3d

28  at 960 (“under Bolger and other Supreme Court precedent, economic motive in

1 itself is insufficient to characterize a publication as commercial[.]"); Stutzman,

2 2013 WL 4853333 at *17 (statements were not commercial even though it was

3 "quite likely" that defendants "had underlying economic motives," because the

4 other two Bolger factors were not met); Bernardo, 115 Cal.App.4th at 345-46 ("any

5 'economic motivation' Planned Parenthood may have had in publishing the Web

6 site speech that [plaintiff] challenges … would be insufficient by itself to turn the

7 statements into commercial speech actionable under the UCL and FAL.").[7]

8      As illustrated by the strikingly similar Bernardo case, the First Amendment

9 bars Plaintiffs' claims.  There, the plaintiffs alleged that Planned Parenthood and its

10 affiliated health center violated the UCL and FAL because their websites contained

11 misleading statements about the safety of abortions, including the potential link

12 between abortion and breast cancer.  Id. at 327-28.   Like Plaintiffs here, the

13 plaintiffs in Bernardo sought an injunction prohibiting Planned Parenthood from

14 publishing its side of the debate.  Id. at 328.  Planned Parenthood moved to strike

15 the complaint, arguing that the lawsuit was an attempt "to use California's

16 consumer protection statutes to thwart Planned Parenthood from exercising its

17 constitutional right to speak about abortion … [and] force it to adopt Bernardo's

18 view of medicine on Planned Parenthood's own Web sites … based on 'very

19 questionable science' and Bernardo's anti-abortion agenda.'"  Id. at 336.  Similarly

20 here, Plaintiffs seek to use the same statutes to thwart SeaWorld from exercising its

21 First Amendment right to speak about the effects of captivity on killer whales based

22
[7] Because the statements are not "commercial" under Bolger, there is no need to
23 undertake the "inextricably intertwined" analysis.  However, the Bernardo court
found that even if other portions of Planned Parenthood's website, such as
24 provision of a toll-free number and hyperlinks to information about specific clinics
and services constituted commercial speech, "the noncommercial speech published
25 in the various Web pages would still receive full First Amendment protection."
26 Bernardo, 115 Cal.App.4th at 346.   Accordingly, even if SeaWorld's website
contains commercial elements, such as links to purchase tickets, this does not
27 convert the noncommercial speech over which Plaintiffs sue into commercial
28 speech.

DOCUMENT PREPARED
ON RECYCLED PAPER

1   on dubious science and their own anti-captivity agenda.  The California Court of

2   Appeals agreed with Planned Parenthood, holding that the statements on Planned

3   Parenthood's websites were noncommercial speech and thus fully protected by the

4   First Amendment from UCL and FAL claims.  Id. at 351.  It held that plaintiffs'

5   lawsuit was an improper attempt to stifle Planned Parenthood's First Amendment

6   rights, and affirmed dismissal of plaintiffs' UCL and FAL claims.

7       The same result should follow here.  Plaintiffs have a First Amendment right

8   to express their views about killer whales.  SeaWorld has the same right.  "The First

9   and Fourteenth Amendments embody our 'profound national commitment to the

10  principle that debate on public issues should be uninhibited, robust, and wide-

11  open[.]"  Garrison v. Louisiana, 379 U.S. 64, 75 (1964) (quoting New York Times

12  v. Sullivan, 376 U.S. 254, 270 (1964)).  Where "suppression of speech suggests an

13  attempt to give one side of a debatable public question an advantage in expressing

14  its views to the people, the First Amendment is plainly offended."  First Nat'l Bank

15  of Boston v. Bellotti, 435 U.S. 765, 785-86 (1978).

16      **D.**   **The CLRA Claim (and UCL Claim Based on it) Must be**
        **Dismissed with Prejudice Because SeaWorld Tickets are Outside**
17      **the Scope of the CLRA**

18      The CLRA prohibits various practices in "transaction[s] intended to result or

19  which result[] in the sale or lease of goods or services to any consumer."  Cal. Civ.

20  Code § 1770.  The statute defines "goods" as "tangible chattels bought or leased

21  primarily for personal, family, or household purposes, including certificates or

22  coupons exchangeable for these goods[.]"  Cal. Civ. Code § 1761(a).[8]  The

23  definition of "services" is "work, labor, and services for other than a commercial or

24  business use, including services furnished in connection with the sale or repair of

25  _____

26  [8] "'Tangible property is that which is visible and corporeal, having substance[.]'"
    Boling v. Trendwest Resorts, 2005 WL 1186519, at *4 (Cal. Ct. App. May 19,
27  2005) (affirming dismissal of CLRA claim; vacation club memberships are not
    "tangible chattels" and thus not "goods") (quoting Navistar Int'l Trans. Corp. v.
28  State Bd. of Equalization, 8 Cal.4th 868, 875 (1994)).

1   goods." Cal. Civ. Code § 1761(b).

2       The California Supreme Court has made clear that if the case does not

3   involve a "good" or "service" within the plain language of the statute, the CLRA

4   claim must be dismissed.  Fairbanks v. Superior Court, 46 Cal.4th 56, 61 (2009)

5   (affirming judgment on the pleadings for defendant on CLRA claim based on

6   defendant's life insurance practices; CLRA did not apply because life insurance is

7   neither a "good" nor a "service" as defined by the statute).

8       Here, Plaintiffs purchased SeaWorld tickets.  The tickets were temporary

9   licenses, allowing them to enter the park, visit exhibits, and attend shows.  The

10  tickets themselves have no value, but rather exist as indicia of the privilege of

11  entertainment extended to the ticket holder.  A SeaWorld ticket thus is not a

12  tangible chattel, so it is not a CLRA "good."  See Berry v. Am. Express Publ'g,

13  Inc., 147 Cal.App.4th 224, 229 (2007) (holding that a credit card is not a CLRA

14  "good" because "the card has no intrinsic value and exists only as indicia of the

15  credit extended to the cardholder."); Lazebnik v. Apple, Inc., 2014 WL 4275008, at

16  *5 (N.D. Cal. Aug. 29, 2014) (holding that "the Season Pass is not a 'good' within

17  the meaning of the CLRA" because it is "not a tangible chattel.").

18      Nor is a SeaWorld ticket work or labor, so it is not a CLRA "service."

19  Fairbanks, 46 Cal.4th at 61 (holding that life insurance is not a "service" under the

20  act because it is "not work or labor, nor is it related to the sale or repair of any

21  tangible chattel.").  "Because the statutory language is unambiguous, there is no

22  need to consider legislative history."  Id.  However, the CLRA's legislative history

23  underscores the point.  As the California Supreme Court stated in Fairbanks, "[t]he

24  California Legislature adopted [the CLRA] largely from a model law, the National

25  Consumer Act," which defined "services" as including "(a) work, labor, and other

26  personal services, (b) privileges with respect to transportation, hotel and restaurant

27  accommodations, education, entertainment, recreation, physical culture, hospital

28  accommodations,   funerals,   cemetery   accommodations,   and   the   like   and

1  (c) insurance." Id. (emphasis added).  The California Legislature did not include

2  privileges with respect to entertainment in the CLRA's definition of "services,"

3  thereby indicating its intent not to treat entertainment as a service under that statute.

4  See id. (when a statute is modeled on a uniform act, deviation from the uniform

5  act's language is presumed to be deliberate and reflect a different intent.).  Had the

6  California Legislature intended the CLRA to cover privileges with respect to

7  entertainment, it would have adopted that language from the uniform act.  It did not.

8      Because SeaWorld tickets are neither "goods" nor "services" under the

9  CLRA, and amendment of the pleadings would not cure this defect, the CLRA

10  claim should be dismissed with prejudice.  See Palestini v. Homecomings Fin.,

11  LLC, 2010 WL 3339459, at *11 (S.D. Cal. Aug. 23, 2010) (dismissing CLRA

12  claim with prejudice because mortgage loans are neither goods nor services as

13  defined by the Act); I.B. ex rel. Fife v. Facebook, Inc., 905 F. Supp. 2d 989, 1008

14  (N.D. Cal. 2012) (dismissing CLRA claim with prejudice because "Facebook

15  Credits" are not goods or services covered by the Act, and amendment would not

16  cure that defect).

17      For the same reason, the portion of Plaintiffs' UCL claim purportedly based

18  on a CLRA violation, (see FAC ¶ 299), must also be dismissed.  "Where a plaintiff

19  cannot state a claim under the 'borrowed' law, she cannot state a UCL claim

20  either."  Silcox v. State Farm Mut. Auto. Ins. Co., 2014 WL 7335741, at *5 (S.D.

21  Cal. Dec. 22, 2014); see also McMahon v. Take-Two Interactive Software, 2014

22  WL 324008, at *10 (C.D. Cal. Jan. 29, 2014) (dismissing UCL claim predicated on

23  CLRA claim because the software at issue was not a CLRA "good" or "service").

24  **E.    The Unjust Enrichment Class Claims Must be Dismissed Because, as a Matter of Law, they are Incapable of Class Treatment**

25

26  Plaintiffs purport to bring unjust enrichment claims on behalf of the Florida

27  and Texas classes.  FAC ¶ 367.  Unjust enrichment claims under Florida and Texas

28  law are incapable of class treatment because they require "individualized inquiries

concerning the reasons each class member purchased" the product in order to determine whether the defendant's retention of the purported price premium would be "unjust." In re ConAgra Foods, Inc., -- F. Supp. 3d --, 2015 WL 1062756, at *44 (Florida); *62-63 (Texas) (C.D. Cal. Feb. 23, 2015).  This is true even when the benefit received by the defendant is uniform, because "individual differences between each class member's experience will necessitate individualized inquiries to determine in whose favor the equities weigh in resolving [class members'] claims." Id. at *62 (internal quote omitted).  Because these claims are not susceptible to class treatment as a matter of law, the class claims should be dismissed.

## V.   CONCLUSION

For the reasons stated herein, and as summarized in the chart below, Plaintiffs' First Consolidated Amended Complaint should be dismissed in its entirety:

| **Claim** | **Bases for Dismissal** |
|---|---|
| (1) UCL | • Failure to comply with Rule 9(b)<br>• (injunctive relief remedy) No constitutional standing – no likelihood of future injury<br>• No statutory standing – lack of economic injury<br>• First Amendment<br>• (unlawful prong) SeaWorld tickets outside the scope of CLRA – not "goods" or "services" |
| (2) CLRA | • Failure to comply with Rule 9(b)<br>• (injunctive relief remedy) No constitutional standing – no likelihood of future injury<br>• No statutory standing – lack of damages<br>• First Amendment<br>• SeaWorld tickets outside the scope of the statute – not "goods" or "services" |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

| Claim | Bases for Dismissal |
|---|---|
| (3) FAL | • Failure to comply with Rule 9(b)<br><br>• (injunctive relief remedy) No constitutional standing – no likelihood of future injury<br><br>• No statutory standing – lack of economic injury<br><br>• First Amendment |
| (4) Deceit | • Failure to comply with Rule 9(b)<br><br>• No actual damages |
| (5) FDUTPA | • Failure to comply with Rule 9(b)<br><br>• (injunctive relief remedy) No constitutional standing – no likelihood of future injury<br><br>• No statutory standing – lack of actual damages<br><br>• First Amendment |
| (6) Texas DTPA | • Failure to comply with Rule 9(b)<br><br>• (injunctive relief remedy) No constitutional standing – no likelihood of future injury<br><br>• No statutory standing – lack of economic injury |
| (7) Unjust Enrichment | • Failure to comply with Rule 9(b)<br><br>• Cannot certify a class as a matter of law |

Dated:          October 5, 2015          NORTON ROSE FULBRIGHT US LLP

By */s/ John M. Simpson*
JOHN M. SIMPSON
john.simpson@nortonrosefulbright.com
Attorneys for Defendant
SEAWORLD ENTERTAINMENT, INC.

DOCUMENT PREPARED ON RECYCLED PAPER

35514462.1                                                                15cv0660

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

1

## **PROOF OF SERVICE**

2        I hereby certify that a true copy of the above Memorandum of Points and

3   Authorities in Support of Defendant's Motion to Dismiss was served upon the

4   attorney of record for each other party through the Court's CM/ECF filing system

5   on October 5, 2015.

6                                 */s/ John M. Simpson*

7                                John M. Simpson
                                   Attorney for Defendant

8                                john.simpson@nortonrosefulbright.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

15cv0660

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS