UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

HOLLY HALL et al.,

Plaintiffs,

v.

SEA WORLD ENTERTAINMENT, INC.,

Defendant.

Case No.:  3:15-CV-660-CAB-RBB

**ORDER GRANTING MOTION TO DISMISS**

[Doc. No. 50]

This matter is before the Court on SeaWorld's motion to dismiss the first amended complaint.  The motion has been fully briefed and the Court deems it suitable for submission without oral argument.  For the reasons set forth below, the motion is granted.

## I.    Allegations in the Complaint

This now consolidated case originated as three separate class action lawsuits against SeaWorld in which various named plaintiffs sought to represent three separate nationwide classes consisting of purchasers of admission tickets, memberships or other activities at SeaWorld's San Diego, Orlando, or San Antonio parks, respectively (the "San Diego Class", the "Orlando Class", and the "San Antonio Class").  The operative first amended complaint (the "FAC") identifies five named plaintiffs: Holly Hall, Paul Danner, Valerie Simo, Joyce Kuhl, and Elaine Browne.  Hall alleges she purchased admission tickets and

visited the San Diego park twice: first on July 13, 2011, and second on July 12, 2012. Simo alleges she purchased admission tickets and visited the San Diego park on July 10, 2013. Danner alleges he purchased admission tickets and visited the Orlando park on April 25, 2014. Kuhl alleges she purchased an admission ticket and visited the Orlando park on December 30, 2013. Browne alleges she purchased admission tickets and visited the San Antonio park on June 10, 2012.

The overwhelming majority of the ninety-one page FAC consists of allegations of various statements allegedly made by SeaWorld during the last couple years in various contexts, including in posters at the parks, in securities filings, on its website, and elsewhere, concerning its killer whales (also referred to as "orcas"), along with pages of allegations intended to demonstrate that the killer whales in captivity at SeaWorld's parks are not "happy and healthy." [Doc. No. 33 at § IV.A.] Each of the five named plaintiffs, on behalf of themselves and the three putative classes, alleges that they would not have purchased tickets to SeaWorld's parks had they known at the time what they claim to know now about the treatment and condition of the killer whales held in captivity at the parks. To that end, Plaintiffs allege that SeaWorld misled and deceived them and other consumers about the treatment and conditions of the killer whales in violation of various consumer statutes in California, Florida, and Texas and seek restitution, including a refund of the amounts they paid for admission to the parks, and injunctive relief.

## II.    Legal Standard

In most cases, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). On the other hand, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678; *see also Lee v. City of*

*Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001) ("Conclusory allegations of law are insufficient to defeat a motion to dismiss").  Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or . . . allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  "In sum, for a complaint to survive a [12(b)(6)] motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted).

Here, however, there is no dispute that all of Plaintiffs' claims are based on alleged fraud and are therefore subject to the heightened pleading standard under Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud."  Fed. R.Civ. P. 9(b).  "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks and ellipses omitted); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under [R]ule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations."). "Averments of fraud must be accompanied by the *who, what, when, where, and how* of the misconduct charged." *Kearns*, 567 F.3d at 1124 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)) (emphasis added; internal quotation marks omitted). Thus, when a plaintiff claims that a statement is false or misleading, "[t]he plaintiff must set forth *what* is false or misleading about a statement, and *why* it is false." *Vess*, 317 F.3d at 1106 (*emphasis* added; internal quotation marks omitted).

Rule 9(b)'s heightened pleading requirements serve "three purposes: (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints 'as a pretext for the discovery of unknown wrongs'; (2) to protect those whose reputation would be harmed as a result of being subject to fraud

charges; and (3) to 'prohibit [ ] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Kearns*, 567 F.3d at 1125 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)) (brackets in original).  These heightened pleading requirements are equally applicable to fraud claims based on omissions or nondisclosures by a defendant.  *See Kearns*, 567 F.3d at 1127 ("Because the Supreme Court of California has held that nondisclosure is a claim for misrepresentation in a cause of action for fraud, it (as any other fraud claim) must be pleaded with particularity under Rule 9(b).").

### III.   The San Diego Class Claims

The San Diego Plaintiffs assert four claims under California law: (1) violation of the California Unfair Competition Law (the "UCL"); (2) violation of the California False Advertising Law (the "FAL"); violation of the California Consumer Legal Remedies Act (the "CLRA"); and Deceit.  Courts often analyze the first three claims—for violations of California consumer protection statutes—"together because they share similar attributes." *In re Sony Gaming Networks & Customer Data Security Breach Litig.*, 996 F.Supp. 2d 942, 985 (S.D. Cal. 2014).  As the *Sony* court explained:

> The UCL prescribes business practices that are 'unlawful, unfair or fraudulent," Cal. Bus. & Prof. Code § 17200, the FAL prohibits the dissemination of any advertising "which is untrue or misleading," Cal. Bus. & Prof. Code § 17500, and the CLRA declares specific acts and practices in the sale of goods or services to be unlawful, including making affirmative misrepresentations or omissions regarding the "standard, quality, or grade" of a particular good or service, Cal. Civ. Code § 1770(a). Under the UCL and FAL a plaintiff may only recover restitution and injunctive relief, whereas a plaintiff's recovery under the CLRA is not so limited.

*Id.* at 985-86.

Here, most of the differences in the pleading requirements for the California claims (including the deceit claim) are not relevant to the instant motion.  All four claims are premised on the same course of allegedly fraudulent conduct and based on the same alleged misrepresentations and omissions, meaning all of the claims are grounded in fraud and

must be pled with particularity pursuant to the heightened pleading standards in Rule 9(b).[1] All four claims require allegations of actual reliance, at least by the named plaintiffs, for those plaintiffs to have standing.[2] Further, although the injury requirements of each claim may differ somewhat, Plaintiffs argue that the same alleged injury (that they paid for tickets to SeaWorld that they would not have purchased but for SeaWorld's alleged deception) satisfies the requirements for a claim under any of the statutes. Accordingly, the Court will analyze the California claims together, drawing distinctions only when necessary.

### A. Standing

SeaWorld argues that Plaintiffs lack standing because the FAC does not allege that the named plaintiffs actually relied on any misrepresentations or omissions. "[T]to have standing to bring a UCL, FAL, or CLRA claim, Plaintiffs must plead that they relied on the misleading materials." *Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB, 2013 WL 1629191, at *2 (N.D. Cal. Apr. 16, 2013); *see also Davidson v. Kimberly-Clark Corp.*, No. C 14-1783 PJH, 2014 WL 3919857, at *9 (N.D. Cal. Aug. 8, 2014) ("[T]o maintain a claim under the FAL and CLRA, as well as under any UCL claim premised on fraud or misrepresentation, a plaintiff must plead facts showing that she relied on the defendant's alleged misrepresentation."); *see also Cohen v. DIRECTV, Inc.*, 178 Cal. App. 4th 966, 980 (Cal. Ct. App. 2009) ("[W]e do not understand the UCL to authorize an award

---

[1] *See Kearns*, 567 F.3d at 1125 ("Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.") (citing *Vess*, 317 F.3d at 1103–06); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F.Supp. 2d at 967 ("Rule 9(b)'s heightened pleading standards apply equally to claims for violation of the UCL, FAL, or CLRA that are grounded in fraud."); *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1093 (S.D. Cal. 2010) ("[W]here a plaintiff alleges fraud as the basis for a violation of [the FAL], the particularity requirement of Rule 9(b) of the Federal Rules of Civil Procedure applies to the fraud allegations.") (internal quotations and citation omitted).

[2] *Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 326–27 (2011); *In re Tobacco II Cases*, 46 Cal. 4th 298, 306 (2009) (A plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions."); *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d at 969 ("For fraud-based claims under all three consumer statutes the named Class members must allege actual reliance to have standing.").

for injunctive relief and/or restitution on behalf of a consumer who was never exposed in any way to an allegedly wrongful business practice."). "Reliance is proved by showing that the defendant's misrepresentation or nondisclosure was 'an immediate cause' of the plaintiff's injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th at 326. "[T]he same level of specificity is required with respect to [pleading] reliance as with respect to misrepresentations." *Marolda v. Symantec Corp.*, 672 F.Supp. 2d 992, 1001 (N.D. Cal. 2009).

Thus, "in a false advertising case, plaintiffs meet this requirement if they show that, by relying on a misrepresentation . . . they 'paid more for a product than they otherwise would have paid, or bought it when they otherwise would not have done so.'" *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3, 1108 (9th Cir. 2013)); *see also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011) (holding that in a UCL case, to establish standing, "a party must . . . (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim.") (*emphasis* in original)).[3]  Put differently, "a UCL fraud plaintiff must allege he or she was motivated to act or refrain from action based on the truth or falsity of a defendant's statement. . . ." *Kwikset*, 51 Cal. 4th 310, 327 n.10.  This requirement of actual reliance stems from the California voters' 2004 enactment of Proposition 64, which curtailed "the prior practice of filing suits on behalf of clients who have not used the defendant's product or service, *viewed the defendant's advertising*, or had any other business dealing with the

---

[3] *See also Moore v. Apple, Inc.*, 73 F.Supp. 3d 1191, 1200 (N.D. Cal. 2014) ("[T]he Court has consistently required allegations of actual reliance and injury at the pleading stage for claims under all three prongs of the UCL where such claims are premised on misrepresentations."); *Williamson v. Apple, Inc.*, No. 5:11-CV-00377 EJD, 2012 WL 3835104, at *4 (N.D. Cal. Sept. 4, 2012) ("[A] plaintiff asserting a CLRA claim which sounds in fraud must establish reliance and causation."); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 946 (S.D. Cal. 2007) ("California requires a plaintiff suing under the CLRA for misrepresentations in connection with a sale to plead and prove she relied on a material misrepresentation.").

defendant." *Id.* at 321 (*emphasis* added and internal quotation marks omitted). Accordingly, before addressing whether Plaintiffs have pled any actionable misrepresentations or omissions with the requisite particularity under Rule 9(b), the Court must address whether Plaintiffs have adequately alleged standing for a claim based on those affirmative misrepresentations, or omissions.   In addition, the Court must determine whether Plaintiffs have alleged the requisite economic injury.

### 1.   Reliance on Affirmative Misrepresentations

SeaWorld argues that Plaintiffs lack standing because they have not alleged that they relied on any specific misrepresentations when purchasing their tickets.   Although Plaintiffs list the alleged actionable misrepresentations in their opposition, they effectively concede that they have not specifically alleged reliance on any particular statement. Instead, Plaintiffs rely on *Tobacco II* for the proposition that when the alleged misrepresentations are alleged to be material,[4] a plaintiff is entitled to a "presumption, or at least an inference, of reliance." *In re Tobacco II Cases*, 46 Cal. 4th at 327.   Plaintiffs' reliance on *Tobacco II* is misplaced.

*Tobacco II* "does not stand for the proposition that a consumer who was never exposed to an alleged false or misleading advertising or promotional campaign is entitled to restitution."   *Pfizer Inc. v. Superior Court*, 182 Cal. App. 4th 622, 632 (2010); *see also In re 5-hour ENERGY Mktg. & Sales Prac. Litig.*, No. MDL 13-2438 PSG PLAX, 2014 WL 5311272, at *16 (C.D. Cal. Sept. 4, 2014) ("The existence of a prolonged marketing and advertising strategy does not relieve Plaintiffs of the need to allege exposure to the

---

[4] Plaintiffs take this argument a step further by arguing that because materiality is a question of fact, a complaint cannot be dismissed on the basis that a misrepresentation is not material, and therefore imply that so long as a complaint alleges misrepresentations, it cannot be dismissed for failure to allege reliance. Applying the *Tobacco II* presumption in this manner would all but eliminate the actual reliance requirement for fraud-based claims by allowing a complaint to survive even if the plaintiff had never seen the allegedly false advertisements.  There is no support in the caselaw for such an extreme departure from the requirements of California's consumer statutes and Federal Rule 9(b).  Indeed, the California Supreme Court explicitly reaffirmed the actual reliance requirement in *Tobacco II* itself.  *In re Tobacco II Cases*, 46 Cal. 4th at 306; *see also Kwikset*, 51 Cal. 4th at 326 (noting that a showing of reliance is required in connection with a UCL claim).

marketing strategy and particular misrepresentations relied upon.") (citation omitted). Rather, *Tobacco II*'s much narrower holding is that a plaintiff who viewed numerous statements and advertisements during a decades-long advertising campaign is not required "to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements." *In re Tobacco II Cases*, 46 Cal. 4th at 328. That being said, a plaintiff "cannot rely on *Tobacco II* unless they have alleged an advertising campaign that is similarly extensive and lengthy." *Bronson*, 2013 WL 1629191, at *3.

Here, Plaintiffs try, unsuccessfully, to equate SeaWorld's alleged advertising about its killer whales with the tobacco companies' decades-long campaign concerning the health effects of smoking. The FAC, however, does not allege any advertising or other statements by SeaWorld from before 2013. Further, the statements quoted in the FAC allegedly come from an array of sources and mediums, including securities filings, testimony in administrative proceedings, radio interviews, and statements posted on SeaWorld's website. With the possible exception of the website, many of these statements were not even made in advertisements, let alone as part of a pervasive advertising campaign of the sort at issue in *Tobacco II*. If the vague and conclusory allegations of an advertising campaign in the FAC were sufficient, whatever exception that may have been created by *Tobacco II* would swallow the well-settled rule that fraud plaintiffs must plead reliance with particularity. *See, e.g., Haskins*, 2013 WL 6234610, at *5 (holding that alleged six-year advertising campaign did not implicate *Tobacco II*); *Bronson*, 2013 WL 1629191, at *3 (advertising campaign that began in 2012 was not sufficient to implicate *Tobacco II*); *In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 903 F. Supp. 2d 880, 926-27 (C.D. Cal. 2012) ("Conclusory allegations that '[the defendant] advertises, promotes and sell[s its] health plans based on false, widely disseminated representations on its website, SPDs, and other promotional materials" fall well short of the pervasive, decades-long advertising campaign described in [*Tobacco II*].").

Even if the allegations concerning the extent of SeaWorld's advertising campaign were equivalent to those in *Tobacco II*, the FAC does not pass muster. *Tobacco II* expressly

held that a plaintiff "proceeding on a claim of misrepresentation as the basis of his or her UCL action must demonstrate actual reliance on the allegedly deceptive or misleading statements, in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions." *Kwikset*, 51 Cal. 4th at 326-27 (quoting *Tobacco II*, 46 Cal. 4th at 306).  Further, when proceeding in federal court, "regardless of the substantive standard announced in *Tobacco II*, Rule 9(b) requires that plaintiffs allege fraud-based causes of action with particularity. Thus, while under certain circumstances *Tobacco II* may absolve plaintiffs in California courts from pleading the exact content, location, and timing of a representation that was part of a long-term fraudulent advertising campaign, Rule 9(b) mandates that the causation elements announced in *Tobacco II* be pled with specificity." *In re Actimmune Mktg. Litig*., No. C 08-02376 MHP, 2009 WL 3740648, at *13 (N.D. Cal. Nov. 6, 2009) *aff'd*, 464 F. App'x 651 (9th Cir. 2011); *see also Goldsmith v. Allergan, Inc.*, No. CV 09-7088 PSG EX, 2011 WL 147714, at *4 (C.D. Cal. Jan. 13, 2011) (stating that *Tobacco II*'s arguably relaxed reliance pleading requirement does not apply in federal court, where Rule 9 governs).[5]

Here, with one immaterial exception concerning plaintiff Hall,[6] the complaint does

---

[5] Plaintiffs rely on *Haskins v. Symantec Corp*., No. 13-CV-1834-JST, 2013 WL 6234610, at *5 (N.D. Cal. Dec. 2, 2013), where the Court questioned whether Rule 9(b) and the Ninth Circuit's opinion in *Kearns* could be reconciled with *Tobacco II*, noting that to require the specificity required by Rule 9(b) when a plaintiff was subjected to a long-term advertising campaign like that described in *Tobacco II* would require a plaintiff to plead specific facts even if when the plaintiff need not prove those facts to prevail under the underlying substantive law.  Nevertheless, the *Haskins* court ultimately did not need to resolve how *Tobacco II* impacts Rule 9(b) because it found that the advertising alleged by the plaintiff, which took place over a six year period (and only began less than two years before the plaintiff made her purchase), was not the type of campaign encompassed by the *Tobacco II* case.  *Haskins*, 2013 WL 6234610, at *5. Here, although the Court acknowledges the potential inconsistency between *Kearns* and *Tobacco II*, the Court is bound by *Kearns*, and not *Tobacco II*.  Moreover, as was the case in *Haskins*, the Court need not fully resolve this issue because the FAC fails to adequately allege an advertising campaign that would implicate any lessened pleading requirements under *Tobacco II*.

[6] The only specific statement allegedly relied on by Plaintiff Hall concerned purported misrepresentations concerning the cause of death of a trainer at the SeaWorld Park in Orlando.  Yet, Plaintiffs' opposition does not even list this statement as one of the actionable misrepresentations in the FAC.  In any event, the FAC fails to plead this statement with specificity, and it appears that the statement allegedly relied on by Hall was made by a sheriff's office in Florida, not by SeaWorld.  At a minimum, this alleged misrepresentation was not part of any advertising campaign, so even if the *Tobacco II* exception applied

9

not allege that the named plaintiffs actually saw or read *any* advertising or statements made by SeaWorld prior to purchasing their tickets.  Rather, under the section of the complaint titled "Specific Plaintiff Allegations," the complaint merely alleges that SeaWorld was engaging in the alleged false advertising when the named plaintiffs purchased their tickets. Moreover, although the FAC does not provide a specific date for many of the alleged misrepresentations, most if not all of the specific dates provided were *after* the named San Diego Plaintiffs allegedly purchased their tickets to SeaWorld, meaning Plaintiffs could not have seen and relied on these statements when purchasing their tickets.  If the named plaintiffs did not see (and could not have seen) the alleged false advertising before purchasing their tickets, the alleged misrepresentations could not have been "an immediate cause" of the Plaintiffs' decision to make their purchase.  *Tobacco II*, 46 Cal. 4th at 326.

Because the complaint does not allege (let alone with any specificity) that any of the named plaintiffs saw and relied on SeaWorld's statements about its treatment of whales when purchasing their tickets, the named San Diego Plaintiffs lack standing to bring claims on behalf of the putative San Diego Class.  *See, e.g., Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1049 (N.D. Cal. 2014) (holding that the plaintiffs did not plead actual reliance as required for standing where the plaintiffs did not "allege that they saw, read, or relied on any representations" by the defendant prior to making their purchases); *Bronson*, 2013 WL 1629191, at *2-3 (dismissing complaint for lack of standing where the plaintiffs did not allege that they relied on web and print advertising before making their purchase). Accordingly, the San Diego Plaintiffs' claims are dismissed without prejudice to the extent they are based on affirmative misrepresentations by SeaWorld.

---

to some of SeaWorld's statements, it would not excuse Hall from providing the details of these alleged statements.  Moreover, because an alleged misrepresentation about an event in Florida is not related to the conditions of the whales held in captivity at the SeaWorld park in San Diego, Hall cannot sufficiently plead reliance on this statement.  *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d at 1092-93 (noting that misrepresentations are not actionable when they do not relate to the claimed defect in a product).

## 2. Reliance on Omissions

SeaWorld separately argues that the San Diego Plaintiffs' claims should be dismissed for lack of standing because they have not alleged actual reliance on any omissions. "An essential element for a fraudulent omission claim is actual reliance." *Daniel v. Ford Motor Co.*, __ F.3d __, No. 13-16476, 2015 WL 7740646, at *6 (9th Cir. Dec. 2, 2015). As with affirmative misrepresentations, "[t]o prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct." *Id.* In other words, "a plaintiff must show that had the omitted information been disclosed, one would have been aware of it and behaved differently." *Sanchez v. Wal Mart Stores, Inc.*, No. CIV206CV02573JAMKJM, 2009 WL 2971553, at *2 (E.D. Cal. Sept. 11, 2009) (internal quotation marks omitted).

Here, as discussed above, the FAC does not specifically allege that Plaintiffs saw or heard, let alone relied on, any advertisements, offers, or other representations of SeaWorld in advance of their ticket purchases. As a result, the FAC fails to plead how, if the allegedly omitted material had been disclosed, the Plaintiffs would have been aware of it and behaved differently. Accordingly, Plaintiffs have failed to plead with specificity that they relied on any omissions in purchasing their tickets and therefore lack standing to bring their claims based on purported omissions as well.

Separately, even if Plaintiffs had alleged with specificity where they would have seen the allegedly omitted information concerning the conditions and treatment of the whales had it been disclosed by SeaWorld, Plaintiffs could not have "relied" on such omissions because SeaWorld had no duty to disclose such information. "[A] failure to disclose a fact one has no affirmative duty to disclose is [not] 'likely to deceive' anyone within the meaning of the UCL." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 838 (Cal. Ct. App. 2006). Along these lines, "California courts have generally rejected a broad obligation to disclose," and instead held that "a manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141

(9th Cir. 2012) (internal quotation marks omitted); *see also Marcus v. Apple Inc*, No. C 14-03824 WHA, 2015 WL 151489, at *6 (N.D. Cal. Jan. 8, 2015) (relying on *Wilson* and dismissing CLRA claims because the plaintiffs "failed to plead the existence of any affirmative misrepresentations by Apple, and have not alleged any safety issues"); *Willis v. Buffalo Pumps Inc.*, 34 F. Supp. 3d 1117, 1132 (S.D. Cal. 2014) ("In *Wilson*, the Ninth Circuit rejected a broad obligation to disclose all material facts, but accepted that a manufacturer would be 'bound to disclose' a defect that posed safety concerns or risk of physical injury."); *Hodges v. Apple Inc.*, No. 13-CV-01128-WHO, 2013 WL 6698762, at *4 (N.D. Cal. Dec. 19, 2013) ("To survive a motion to dismiss [a CLRA claim], the plaintiff must plead with particularity that the defendant made an actual misrepresentation, an omission contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose' related to safety concerns.").[7]

The allegedly omitted information here all generally relates to Plaintiffs' position that the killer whales held in captivity by SeaWorld are unhealthy, or at least are not as

---

[7] Ignoring this binding Ninth Circuit law and instead relying on district court opinions, both sides base their arguments on the proposition that a defendant generally has a duty to disclose information in four situations: "(1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material fact." *Falk v. General Motors Corp.*, 496 F.Supp.2d 1088, 1095 (N.D.Cal. 2007); *see also In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F.Supp. 2d at 991. At best, however, there is a dispute among the California courts of appeal concerning whether a failure to disclose is actionable under the UCL if it satisfies one of the four tests for the tort of fraud by failure to disclose. *See Backhaut*, 74 F.Supp. 3d at 1049 n.9; *Herron v. Best Buy Co., Inc.*, 924 F.Supp. 2d 1161, 1175 n.2 (E.D. Cal. 2013). In *Wilson*, however, the Ninth Circuit discussed the four factors listed in *Falk* at length, ultimately concluding that, "[e]ven if this Court applies the factors from *Falk* regarding materiality, as Plaintiffs suggest, for the omission to be material, the failure must still pose safety concerns." *Wilson*, 668 F.3d at 1142. *Wilson*, not *Falk*, is binding on this Court. *Rasmussen v. Apple, Inc.*, 27 F.Supp. 3d 1027, 1035-38 (N.D. Cal. 2014) (noting the debate among courts as to the "safety" requirement for a duty to disclose, but ultimately following *Wilson* as "binding precedent"); *Hodges*, 2013 WL 6698762, at *4 ("*Wilson* is published and binding."); *cf. Ferranti v. Hewlett-Packard Co.*, No. 5:13-cv-03847-EJD, 2015 WL 5302674, at *7 (N.D. Cal. Sept. 10, 2015) (holding that there was no duty to disclose product defect in part because it did not pose a safety concern to consumers); *Buller v. Sutter Health*, 160 Cal. App. 4th 981, 988 n.3 (Cal. Ct. App. 2008) (applying *Daugherty* and disagreeing with *Falk* to the extent the four tests listed therein imposed on the defendant a duty to disclose its discount policy).

healthy as they would be if they were in the wild, and that they exhibit features or suffer maladies that whales in the wild do not have.[8]  These alleged "defects" in the item purchased here (namely, attendance at a SeaWorld park) do not pose any safety concerns to plaintiffs or other visitors to SeaWorld parks.  Thus, while SeaWorld could be liable for measurably false, affirmative representations concerning the health and conditions of the whales, SeaWorld had no general duty to disclose facts concerning the health or welfare of the whales in captivity to consumers.  Accordingly, Plaintiffs cannot have relied on any omissions about the health or conditions of the whales.

To hold otherwise, simply because Plaintiffs allege that information about the whales' conditions and health, had it been disclosed, would have been material to them, would effectively require any company selling any product or service to affirmatively disclose every conceivable piece of information about that product or service (or even about the company generally) because inevitably some customer would find such information relevant to his or her purchase.  Under the standard argued by Plaintiffs, any consumer would have standing to sue any company that fails to disclose product ingredients or components, or business practices that could cause that consumer to regret patronizing that business.[9]

The range of alleged actions that could expose a company to liability under the UCL or CLRA would be limitless.  For example, if a consumer discovers that a company from

_____

[8] The alleged omissions identified in the opposition brief include that: (1) SeaWorld has separated nearly two-dozen calves from their mothers; (2) SeaWorld's whales have less freedom of movement than do whales in the wild; (3) SeaWorld conceals the whales sunburns; (4) SeaWorld forces whales to consume unnatural volumes of gelatin; (5) SeaWorld's whales do not live as long as whales in the wild; (6) only 1-5 % of whales in the wild experience collapsed dorsal fins whereas all of SeaWorld's whales do; (7) SeaWorld's whales have dental problems not experienced by whales in the wild; (8) SeaWorld inbreeds its whales and forceably impregnates female whales; (9) SeaWorld drugs its whales; and (10) the conditions in captivity lead to dangerous acts of aggression by the whales.  [Doc. No. 52 at 3-4.]

[9] *Cf. In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d at 1095 n.7 ("To impose on manufacturers a broad duty to disclose such that a plaintiff need only allege disappointed expectations to survive a motion to dismiss claims under the CLRA would render meaningless time and other limitations that manufacturers are permitted to place on Express Warranty periods.").

which he has made a purchase treats its employees poorly, that consumer would have standing to sue under the UCL and CLRA simply by alleging that the company omitted information about its treatment of its employees, and that if the company had not omitted this information, the consumer would not have done business with the company. The whales here are analogous to a company's employees. That the whales themselves do not have standing to contest their conditions of captivity does not change the analysis or give Plaintiffs any more standing to assert omission claims than they would have to sue SeaWorld for omitting information about SeaWorld's treatment or compensation of its human employees. *Cf. Searle v. Wyndham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1335 (2002) ("[I]n failing to advise its guests as to how it compensates its employees, the hotel is not guilty of any deceit even under the broad provisions of the UCL.").[10]

To summarize, "when a business enterprise, to promote and defend its sales and profits, makes factual representations about its own products or its own operations, it must speak truthfully." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 946 (2002). If it does not, consumers who relied on the misrepresentations and made a purchase as a result, may have standing under the UCL, FAL, and CLRA. This unremarkable principle does not mean that a business enterprise has an affirmative duty to disclose *anything and everything* that might cause some consumers not to purchase its products, or risk liability for fraudulent conduct under these statutes. In other words, although a plaintiff may have standing to assert a claim that he relied on the representations on a product label, that same plaintiff does not have standing to maintain a claim that he *assumed* characteristics or qualities of a product that were not on the label (with the exception of characteristics or qualities related

---

[10] *But see Stanwood v. Mary Kay, Inc.*, 941 F.Supp. 2d 1212 (C.D. Cal. 2012), *and Beltran v. Avon Prods, Inc.*, No. CV 12-02502-CJC(ANx), 2012 WL 12303424 (C.D. Cal. Dec. 11, 2012) (both holding that *Wilson* is limited to product defect cases because warranty protections are available, and therefore holding that two cosmetics companies had a duty to disclose information about animal testing to consumers because the named plaintiffs alleged that had they known about such testing, they would not have purchased the defendant's products). The Court is not persuaded by the basis upon which these cases distinguish *Wilson* and disagrees with the virtually limitless duty to disclose that these holdings support.

to safety).[11]

Here, because SeaWorld had no duty to disclose the details of the health and conditions of the whales in captivity, the San Diego Plaintiffs could not have relied on SeaWorld's failure to disclose information about the health or conditions of the whales. Moreover, even if SeaWorld had such a duty, the FAC fails to allege with specificity how the San Diego Plaintiffs would have been aware of the allegedly omitted information if SeaWorld had disclosed it. The San Diego Plaintiffs therefore lack standing to bring any fraud-based claims based on alleged omissions about the health and conditions of the whales. Accordingly, the San Diego Plaintiffs' UCL, CLRA and deceit[12] claims premised on pure omissions are dismissed with prejudice.

### 3.    Economic Injury

SeaWorld also argues that Plaintiffs' UCL and FAL[13] claims fail because the injuries of which Plaintiffs' complain are not economic injuries, and even further that Plaintiffs have not suffered any actual damages as a result of the alleged misrepresentations and omissions in the FAC. To this end, SeaWorld contends that Plaintiffs purchased tickets to SeaWorld and that the alleged misrepresentations and omissions are not about those tickets.

---

[11] For example, if a company advertises a product as "Made in the U.S.A.", a consumer who relies on that statement to purchase the product may have a claim if that product is actually made elsewhere. On the other hand, if a company does not advertise where its product is made, a consumer does not have a cause of action for fraudulent omission because the company did not disclose that the product was made outside of the United States. *Cf. Sevidal v. Target Corp.*, 189 Cal. App. 4th 905, 927 (Cal. Ct. App. 2010) (indicating that unless there is legal requirement that a retailer must inform consumers of country-of-origin information, consumers who were not exposed to any affirmative misrepresentation concerning where a product was manufactured would not have a basis to obtain restitution).

[12] The FAL requires affirmative representations, so Plaintiffs' cannot have an FAL claim based on omissions. Cal. Bus. & Prof. Code § 17500; *Norcia v. Samsung Telecomms. Am., LLC*, No. 14-CV-00582-JD, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015) (dismissing FAL claim based on a pure omission theory because "[t]here can be no FAL claim where there is no 'statement' at all.").

[13] Unlike the UCL and FAL, economic damage is not required for standing under the CLRA. The CLRA allows recovery when a consumer "suffers any damage as a result of" an unlawful practice." Cal. Civ. Code § 1780(a). "[P]laintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm." *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 129 (Cal. Ct. App. 2009); *but see Moore v. Apple, Inc.*, 73 F. Supp. 3d 1191, 1200 (N.D. Cal. 2014) ("[T]o adequately plead a CLRA claim, a plaintiff must allege that she relied on the defendant's alleged misrepresentation and that she suffered economic injury as a result.").

SeaWorld's examples of misrepresentations that would be "about the tickets" include a statement that the tickets were good for two days at the parks when they only allowed entrance for one day, or an advertisement that the park contained walruses when no walruses were exhibited.   According to SeaWorld, the alleged misrepresentations or omissions alleged in the FAC were not about the item purchased (the tickets), but about the stream of commerce of that item.   Therefore, so SeaWorld's argument goes, Plaintiffs received the "benefit of their bargain" and did not suffer any injury

SeaWorld relies heavily on *Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 146-47 (Cal. Ct. App. 2008), for its position.   In *Mendes*, the individual plaintiffs were two consumers who had purchased milk and other dairy products that came from cows that allegedly had been raised by the defendants in cruel conditions.   The plaintiffs' alleged injury was that they would not have bought the milk if they had known about the conditions of the producing herd.   The plaintiffs did not allege any false or misleading representations by the defendants.   Further, "[a]ny assumptions regarding treatment of the dairies' cows were not alleged to have been expressed by the consumers to anyone," so such assumptions were not part of the purchasing transaction.   *Mendes*, 160 Cal. App. 4th at 146-47.   Based on these allegations, the court described the plaintiffs injuries as "what might be called 'moral injury.'"   *Id.* at 147.   The court held that this injury did not give the plaintiffs standing under the UCL because they "had the benefit of their bargain—that is, they received dairy products that were not of inferior quality. Any injury they suffered upon learning 'the truth' about industrial dairy farming was not economic."   *Mendes*, 160 Cal. App. 4th at 147.

For their part, Plaintiffs argue that their allegations that they would not have purchased their tickets had they known about SeaWorld's treatment of the whales is sufficient to establish standing.   Plaintiffs rely on *Kwikset* and *Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013).   In *Kwikset*, the plaintiffs brought claims under the UCL and FAL based on allegations that Kwikset had mislabeled its products as "Made in the U.S.A." The California Supreme Court held that "[t]o satisfy the narrower standing requirements

imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." 51 Cal. 4th at 322 (emphasis in original). Applying these requirements, the court held that the plaintiffs' allegations that "(1) Kwikset labeled certain locksets with 'Made in U.S.A.' or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on the labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise," satisfy the standing requirement." *Id.* at 327-38. More generally, "[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging . . . that he or she would not have bought the product but for the misrepresentation." *Id.* at 330.

In *Hinojos*, the plaintiff asserted claims under the UCL, FAL and CLRA on behalf of a class based on allegations that Kohl's falsely claimed that its products were "on sale" when in fact the original or regular price was fictitious. The district court held that plaintiff did not suffer economic injury because he purchased the product he wanted at the price that was advertised. The Ninth Circuit, however, relying on *Kwikset*, reversed, holding that "when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the purchase but for the misrepresentation, he has standing to sue under the UCL and FAL because he has suffered an economic injury." *Hinojos*, 718 F.3d at 1107. In so holding, the Ninth Circuit stated that the "'benefit of the bargain' rationale was explicitly rejected in *Kwikset*." *Id.*

In the context of determining whether a consumer's injury is economic, *Mendes*, *Kwikset*, and *Hinojos* are not easily reconciled.[14] The alleged injury in all three cases is

---

[14] The primary distinguishing factor in these cases is *Mendes* involved alleged omissions, while *Kwikset* and *Hinojos* involved alleged affirmative misrepresentations. *Mendes* is consistent with *Wilson* that the duty to disclose information about a product is limited to information concerning that product's safety. Meanwhile, neither *Kwikset* nor *Hinojos* address standing based on omissions. Regardless, whether a

described similarly; namely, the plaintiffs would not have made their purchases but for the alleged misrepresentations or omissions.  Yet *Mendes* describes this injury as "moral", while *Kwikset* and *Hinojos* describe such injury as economic.  Nevertheless, the Court must follow *Hinojos*, meaning that the San Diego Plaintiffs' allegation that they would not have purchased their tickets if not for SeaWorld's alleged misrepresentations is sufficient to allege an economic injury.  Accordingly, if the San Diego Plaintiffs had adequately pled (or are able to do so in an amended complaint) that they actually saw and relied on misrepresentations by SeaWorld when purchasing their tickets, the allegation that they would not have purchased their tickets but for such misrepresentations is "economic injury," and therefore sufficient to satisfy this aspect the standing requirements for their California claims.  *See generally Minkler v. Apple, Inc.*, 65 F.Supp. 3d 810, 820 (N.D. Cal. 2014) ("An allegation that the plaintiff would not have bought a product but for the purported misrepresentation has been found to be an economic injury sufficient to create standing under the UCL, CLRA, and FAL.").

### B. The Specifics of the Misrepresentations/Omissions

Even assuming that the Plaintiffs adequately alleged that they relied on SeaWorld's misrepresentations or omissions to establish standing to bring their California consumer claims, the FAC still fails to state a claim because Plaintiffs have not sufficiently pled with particularity the details of the misrepresentations and omissions on which they allegedly relied.  As mentioned above, Rule 9(b) requires that Plaintiffs allege "the who, what, when, where, and how" of the misrepresentations or omissions at issue.  *Kearns*, 567 F.3d at 1124. Despite the length of the FAC, Plaintiffs have not satisfied this requirement.

### 1.   Affirmative Misrepresentations

Although the FAC spends close to seventy pages discussing the conditions of the whales at SeaWorld, as well as statements purportedly made by SeaWorld related thereto,

---

plaintiff relied on a misrepresentation or relied on an omission is a separate calculus from whether that plaintiff's alleged injury is "economic" or "moral."

simply listing statements and saying they are false does not satisfy Rule 9(b).  In their opposition, Plaintiffs list fifteen alleged misrepresentations,[15] but for the majority of these statements, Plaintiffs do not allege any information concerning the "who, what, when, where, and how" and where the FAC does contain such information, it demonstrates that Plaintiffs could not have relied on the statements when purchasing their tickets and therefore the statements cannot form the basis of their claims.  Moreover, many of the statements do not appear to be measurably false as is required for them to be actionable. *Hodges*, 2013 WL 6698762, at \*5 ("To show an affirmative representation, a statement must make a 'specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'") (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999)); *Marolda*, 672 F.Supp. 2d at 1001 (holding that a plaintiff "must also state with specificity what made any of the representations false.").

    a.  ***"SeaWorld is dedicated to the highest standards of care for killer whales."***

    b.  ***"SeaWorld's unparalleled breeding success contributes significant information of killer whale reproduction, growth and development."***

    c.  ***"Dorsal fins are not all alike.  Dorsal fins come in many shapes and sizes. They may be straight, wavy, curved, or bent."***

The FAC alleges that these three statements are provided in writing to consumers at a killer whale show at SeaWorld.  [Doc. No. 33 at ¶ 41.]  This allegation means the only consumers who would have seen these statements had already purchased their tickets.

---

[15] Although Plaintiffs do not specifically argue as much in their opposition, the FAC also alleges that "SeaWorld advertisements depict orcas in a colorful, positive light designed to convince potential consumers that the orcas are thriving in captivity."  [Doc. No. 33 at ¶ 44.]  To the extent Plaintiffs intend at some point to argue that images or videos of whales on SeaWorld's website or in SeaWorld's advertisements are themselves misleading and can form the basis for their claims, Plaintiffs offer no support for such a proposition and the Court declines to hold that "'a representation' conveyed by a product's appearance alone can give rise to liability for fraud."  *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 924 (N.D. Cal. 2012) (holding that "representations" of a product itself, as opposed to statements about the product, do not give rise to liability under the UCL or CLRA).

Thus, even assuming that Plaintiffs received these written statements at a show they attended (which is not alleged in the FAC), Plaintiffs would have already purchased their tickets at the time and therefore could not have relied on the statement. *See generally Moore*, 73 F. Supp. 3d at 1201 ("By definition, the CLRA does not apply to unfair or deceptive practices that occur after the sale or lease has occurred.").

Further, the FAC fails to allege why these statements are false. There are no allegations of what "standards of care" for killer whales that SeaWorld disregards. To the contrary, Plaintiffs' entire premise appears to be that no standards of care would be acceptable because killer whales should not be held in captivity at all. Yet, Plaintiffs knew that SeaWorld held killer whales in captivity when they purchased their tickets. Likewise, even assuming Plaintiffs' premise that keeping killer whales in captivity is not healthy for the whales themselves, that does not mean that keeping whales in captivity does not yield information about their reproduction, growth and development. The FAC contains no allegations to the contrary. As for the third statement, the FAC itself contains a picture of a killer whale with a curved dorsal fin, and acknowledges that 1-5% of whales in the wild have such fins. [Doc. No. 33 at ¶ 44.] In other words, the FAC itself acknowledges that not all dorsal fins are identical. Thus, even if Plaintiffs could have relied on these representations when purchasing their tickets, Plaintiffs have not pled any of these alleged misrepresentations with the particularity required by Rule 9(b).

### d. SeaWorld's "animal care specialists [] ensure the health, enrichment, and safety of our diverse family."

Although it is not entirely clear from the FAC, it also appears that this statement allegedly comes from written materials in the parks themselves. [Doc. No. 33 at ¶ 44.] Thus, once again Plaintiffs could not have seen or relied on this statement before purchasing their tickets.

To the extent this statement is not from materials distributed inside the parks, the FAC fails to include any details as to the form of the materials and when they were distributed and seen by Plaintiffs. Further, it is unclear from the FAC how this statement

is actually measurably false.  Accordingly, the FAC does not plead this statement with sufficient particularity.

      **e.** ***"These killer whales are healthy and well-adapted to their surroundings, a fact that is evident to us through our constant care, interaction and observation 24 hours per day."***

      **f.** ***And, living in these habitats, our whales show every sign of physical fitness . . . While our whales do not live the same lifestyle as their wild counterparts, this difference does not translate to negative welfare of these animals . . ."***

The FAC alleges that these two statements appear on SeaWorld's website.  However, the FAC does not allege (1) when the statements first appeared on the website, (2) whether Plaintiffs viewed the statements on SeaWorld's website prior to purchasing their tickets, or at all, (3) where on the website these statements appeared, or (4) how these statements are measurably false.  Accordingly, even assuming the complaint specifically alleged that Plaintiffs viewed and relied on these statements when purchasing their tickets, the statements themselves have not been pled with sufficient particularity under Rule 9(b).

      **g.** ***"We recognize the importance of family bonds."***

The FAC alleges that this statement was made by "SeaWorld's vice president of animal training," and is repeated in SeaWorld "marketing."  Once again, however, the FAC does not allege when the statement was first made and in what context, and when (or if) the statement was seen by Plaintiffs.  Further, it is questionable whether this statement is measurably false.  Although the FAC alleges that SeaWorld separates whale moms and calves presumably in an effort to demonstrate the falsity of this statement, recognizing the importance of a family bond does not necessarily mean keeping whale families together for their entire lives.  Accordingly, the FAC fails to state a misrepresentation claim based on this statement as well.

      **h.** ***"We do not separate killer whale moms and calves."***

The FAC alleges that this statement was made in an "'Open Letter from SeaWorld's Animal Advocates," disseminated on its website and elsewhere first in 2013."  [Doc. No.

33 at ¶ 82.]  Elsewhere, the FAC alleges that this letter was published in December 2013. [*Id.* at ¶¶ 207-08.]  It is unclear who "SeaWorld's Animal Advocates" are and whether this open letter can even be attributed to SeaWorld itself.  Further, the FAC lacks specifics as to exactly where on SeaWorld's website or elsewhere this letter appeared and when or if any of the named plaintiffs saw it and relied on it before purchasing their tickets.  To the contrary, the San Diego and San Antonio Plaintiffs purchased their tickets and visited SeaWorld before December 2013, meaning none of them could have relied on this statement.  Thus, this statement is not sufficiently pled, and in any event does not state a claim for which any of the named San Diego or San Antonio Plaintiffs would have standing to bring.

   *i.*   ***"SeaWorld recognizes the important bond between mother and calf."***

   *j.*   ***"Watch the* truth.  *We respect the* mother-calf *bond*."**

   The FAC alleges that these statements were made "in public advertisements" or in "relentless campaigns", but does not allege when these statements were made, where they appeared, and when or if the named Plaintiffs saw them.  Further, as discussed above, it is questionable whether these statements are measurably false.  Thus, these statements are not sufficiently pled either.

   *k.*   ***"Killer whale health starts with a safe, state-of-the-art habitat and a day filled with enriching activity."***

   The FAC does not provide any specifics about this statement, such as where it appeared and if or when the named Plaintiffs saw it.  Further, while it is clear that Plaintiffs believe that no form of captivity is healthy for killer whales, it is unclear how this statement is measurably false or how Plaintiffs disagree with this statement.  Presumably, Plaintiffs believe this statement is false because (1) the whales allegedly are not in fact "healthy" or as healthy as whales in the wild, and (2) the conditions of captivity at SeaWorld allegedly are not "safe" or "enriching" insofar as the whales live in different conditions and do not have as much space as they do in the wild.  To this end, the FAC includes allegations that as a result of the small size of the habitat, the whales have dental problems, sunburns, and

collapsed dorsal finds.  It is implausible, however, that any consumer would be misled by this statement into thinking that whales kept in captivity have the same amount of space as whales in the wild, or even live in similar conditions to whales in the wild.  There are no allegations that SeaWorld ever misrepresented the existence or size of the whales' habitat, and an advertisement for a park that features shows involving whales in captivity is not provably false or misleading simply because those whales are housed in conditions that are different from the wild, or because those whales are allegedly "less healthy" than they would be if they were in the wild.  Vague or general statements in advertising or elsewhere about the whales' health do not become untrue simply because some of the whales allegedly had sunburns or dental problems as alleged in the FAC.  Regardless, the FAC does not specifically plead the who, where, when and why for this statement as required by Rule 9(b).

> ### l. *"Animals at SeaWorld are never punished, and their food is never withheld"; "their overall diet is never dependent on their behavioral performance"*

The FAC alleges that this statement appears on its website but does not allege any details about where on the website it appeared and if or when the named Plaintiffs saw it. Further, the apparent reason Plaintiffs allege this statement is false appears to be founded solely on the obvious fact that SeaWorld is responsible for feeding the whales generally, just as any zoo (or even a pet-owner) is responsible for feeding animals in its care.  The FAC lacks any specific allegation that specific whales who did not perform well in shows received less food than others, let alone less food to the point that the whales are malnourished.  Accordingly, this alleged misrepresentation does not satisfy Rule 9(b).

> ### m. *Killer whales live "to be about 35, mid-thirties" and "tend to live a lot longer" at SeaWorld.*

The FAC alleges that this statement was "depicted" in the *Blackfish* documentary raising questions about whether this statement can even be attributed to SeaWorld. Moreover, the FAC does not allege that any of the named plaintiffs saw *Blackfish* before

purchasing their tickets, so regardless of the lack of other specifics about the statement, Plaintiffs could not have relied on it. Further, considering the FAC's allegations that *Blackfish* "reveals to those who have viewed it, among other things, that conditions of confinement at SeaWorld are unnatural and unhealthy for its orcas," [Doc. No. 33 at ¶ 193], and reveals "obvious truths" about SeaWorld's treatment of orcas [*Id.* at ¶ 224], it would be implausible for any person to rely on any alleged SeaWorld statements depicted therein. Accordingly, this statement, and any other statements from *Blackfish*, are not actionable misrepresentations.

### n. "[K]iller whales at SeaWorld are living as long as their counterparts in the wild."

The FAC alleges that this statement was published on SeaWorld's website "in reaction to criticism from orca scientists." Although the FAC again fails to provide any specifics about where on SeaWorld's website the statement appeared and if or when Plaintiffs viewed it, it appears from the chronology of the FAC that the statement was made after *Blackfish* was shown on television. Assuming that to be the case, the San Diego and San Antonio Plaintiffs could not have seen it or relied on it when purchasing their tickets. Accordingly, this statement is not specifically pled and likely cannot form the basis of a misrepresentation claim for the San Diego or San Antonio Plaintiffs.

### o. 23% of wild orcas have collapsed dorsal fins.

Although the FAC alleges that this statement is false because only 1-5 % of wild killer whales have collapsed dorsal fins, the FAC contains no information about who made this allegedly false statement, how it was made (orally, in writing, etc.), where it appeared, and when or if Plaintiffs saw it. Further, this statement is about wild whales, not whales in captivity. Absent additional allegations about the context of this statement, it is impossible to determine whether this statement is an actionable misrepresentation about SeaWorld or SeaWorld's whales. Thus, this statement is not sufficiently pled either.

\*\*\*

1    In summary, none of the fifteen alleged misrepresentations listed in the opposition
2    are pled with particularity in the FAC.  Nowhere in the FAC do Plaintiffs specify when
3    they were exposed to any of these statements and which ones they found material and relied
4    on.  Moreover, based on the specifics that can be discerned from the FAC, most of the
5    alleged statements were made after Plaintiffs purchased their tickets, meaning Plaintiffs
6    could not have relied on them when making their purchase.  Accordingly, the FAC fails to
7    state a claim under the UCL, CLRA, FAL, or for deceit based on an affirmative
8    misrepresentation by SeaWorld.[16]

9                              **2.    Omissions**

10   Although, as discussed above, Plaintiffs' opposition includes at least some argument
11   in support of their fraud-based claims premised on alleged affirmative misrepresentations,
12   the opposition dedicates significantly more effort arguing in support of Plaintiffs' claims
13   based on alleged omissions or non-disclosures by SeaWorld.  These omissions "must be
14   pleaded with particularity under Rule 9(b)."  *Kearns*, 567 F.3d at 1127.  "[T]o plead the
15   circumstances of omission with specificity, plaintiff must describe the content of the
16   omission and where the omitted information should or could have been revealed, as well
17   as provide representative samples of advertisements, offers, or other representations *that*
18   *plaintiff relied on* to make her purchase and that failed to include the allegedly omitted
19   information."  *Marolda*, 672 F.Supp. 2d at 1002 (*emphasis* added).

20   Here, the FAC generally alleges that SeaWorld omitted information "regarding orca
21   conditions and treatment," [Doc. No. 33 at ¶ 255.] and provides some details about various
22   maladies that SeaWorld's whales allegedly suffer.  However, as discussed above, because
23   these maladies do not impact the health and safety of the consumers, unless SeaWorld
24   made an affirmative misrepresentation about these health issues, SeaWorld had no duty to

---

26   [16] SeaWorld also argues that Plaintiffs' claims are barred by the First Amendment to the Constitution
27   because they arise out of non-commercial speech.  Because the alleged misrepresentations are not
     sufficiently pled, the Court lacks enough detail about the statements to determine whether they are
28   protected by the First Amendment.  In any event, there is no need to address the argument as the motion
     to dismiss is granted on other grounds.

disclose them.  *See Wilson*, 668 F.3d at 1141.  Moreover, although the FAC includes examples of alleged advertising and representations by SeaWorld, it does not allege that Plaintiffs viewed or relied on any this advertising or statements about orca conditions or treatment before they went to a SeaWorld park.  Thus, the FAC fails to plead with specificity where any omitted information could have been revealed such that Plaintiffs would have seen it prior to purchasing their tickets.  Lacking such allegations, the FAC fails to plead actionable fraud based on omissions with particularity as required by Rule 9(b).  Accordingly, even if SeaWorld had a duty to disclose the allegedly omitted information about the health and conditions of the whales, the FAC fails to state a claim under the UCL, CLRA, FAL, or for deceit based on omissions by SeaWorld.

### 3.  Conclusion

The FAC alleges a unified course of fraudulent conduct, namely that SeaWorld knowingly misrepresented or omitted information about the conditions of the killer whales in captivity at its parks, with an intent to induce reliance and defraud consumers into purchasing tickets for admission to the parks.  The entire FAC, therefore, including all four of the California claims, must be pleaded with particularity.  *Kearns*, 567 F.3d at 1127. Accordingly, even assuming the San Diego Plaintiffs had standing, because the FAC does not plead any of the alleged misrepresentations or omissions with particularity as required by Rule 9(b), all of the California claims are subject to dismissal on this ground as well.

### C. The CLRA Does Not Apply

The CLRA prohibits practices "undertaken . . . in a transaction . . . which results in the sale or lease of goods or services."  Cal. Civ. Code § 1770(a).  The CLRA:

> defines "goods" as "tangible chattels bought or leased for use primarily for personal, family, or household purposes, including certificates or coupons exchangeable for these goods, and including goods that, at the time of the sale or subsequently, are to be so affixed to real property as to become a part of real property, whether or not severable from the real property." (Civ. Code, § 1761, subd. (a).) It defines "services" as "work, labor, and services for other than a commercial or business use, including services furnished in connection with the sale or repair of goods." (Id., § 1761, subd. (b).)

*Fairbanks v. Superior Court*, 46 Cal. 4th 56, 60-61 (2009).

SeaWorld argues that the CLRA does not apply because the tickets purchased by the San Diego Plaintiffs are neither "goods" nor "services." Instead, according to SeaWorld, the tickets were "temporary licenses" that allowed Plaintiffs entry into the park. [Doc. No. 50-1 at 37.] In their opposition, Plaintiffs argue that "SeaWorld's amusement park products are plainly entertainment 'services.'" [Doc. No. 52 at 39.] However, Plaintiffs cite to no supporting authority and instead point to SeaWorld's service mark registrations with the United States Patent and Trademark Office, essentially arguing that such documents constitute an admission that the tickets are services. The Court is unpersuaded and finds SeaWorld's service mark filings unhelpful in determining whether tickets constitute a good or service within the confines of the CLRA.[17]

There are no cases discussing whether tickets for entrance to an amusement park constitute services under the CLRA. However, to hold that the tickets, or more specifically the admission to the parks that the tickets provide, constitute a service requires a strained and unnatural construction of the term. Accordingly, for this additional reason, Plaintiffs' CLRA claims are dismissed with prejudice. *Cf. Kissling v. Wyndham Vacation Resorts, Inc.*, No. 15-CV-04004-EMC, 2015 WL 7283038, at *5 (N.D. Cal. Nov. 18, 2015) (holding that "timeshare points do not fall under the CLRA's definition of 'goods' or 'services.'"); *Wixon v. Wyndham Resort Dev. Corp.*, No. C07-02361 JSW, 2008 WL 1777590, at *4 (N.D. Cal. Apr. 18, 2008) (holding that timeshare credits which provide "a vacation license, the right to use, occupy and enjoy . . . properties" do not qualify as services). Likewise, Plaintiffs' UCL claims, to the extent they are premised on a violation of the CLRA, are also dismissed with prejudice. *Silcox v. State Farm Mut. Auto. Ins. Co.*, No. 14CV2345 AJB MDD, 2014 WL 7335741, at *5 (S.D. Cal. Dec. 22, 2014) ("Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either.").

---

[17] Because the Court finds SeaWorld's filings with the USPTO to be irrelevant to the analysis of whether the CLRA applies, Plaintiffs' Request for Judicial Notice [Doc. No. 53] is denied as moot.

## IV.     The Orlando Class Claims

### A. Florida Unfair & Deceptive Trade Practices Act (Fla. Stat. § 501.201)

SeaWorld moves to dismiss the Orlando Plaintiffs' FDUTPA claim for many of the same reasons discussed above.  The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."   The three elements of a claim under FDUTPA are: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *In re Ford Tailgate Litig.*, No. 11-CV-02953-RS, 2015 WL 7571772, at *14 (N.D. Cal. Nov. 25, 2015) (quoting *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. Dist. Ct. App. 2008). "The measure of actual damages is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Id.* (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006)).

The Orlando Plaintiffs' FDUTPA claims are based on the same alleged fraudulent conduct as the California claims and for the most part, the parties make the same arguments with respect to this claim.  Because this claim is "grounded in fraud, the pleading of [the] claim as a *whole* must satisfy the particularity requirement of Rule 9(b)." *Kearns*, 567 F.3d at 1127 (internal ellipses and quotation marks omitted; *emphasis* in original).[18]

_____

[18] Although there is some dispute among Florida courts as to whether Rule 9(b) applies to FDUTPA claims, SeaWorld argues in its motion that Rule 9(b) applies, and Plaintiff does not argue otherwise, so the Court applies Rule 9(b) to the FDUTPA on this ground as well. *Cf. Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 958 (C.D. Cal. 2012) (relying on *Kearns* to hold that FDUTPA claims based on fraudulent conduct must be analyzed under Rule 9(b)); *Hilton v. Apple Inc.*, No. CV137674GAFAJWX, 2014 WL 10435005, at *5 (C.D. Cal. Apr. 18, 2014) (holding that FDUTPA claim arising out of alleged misrepresentations is subject to heightened pleading requirements of Rule 9(b)); *but cf. In re 5-hour ENERGY Mktg. & Sales Practices Litig.*, 2014 WL 5311272, at *25 n.7 ("Federal courts in Florida have split on the question of whether Rule 9(b) applies to the FDUPTA."). *Compare Guerrero v. Target Corp.*, 889 F. Supp. 2d 1348, 1355 (S.D. Fla. 2012) ("[T]he heightened pleading requirements of Rule 9(b) cannot serve as a basis to dismiss FDUTPA claims.") *with Llado-Carreno v. Guidant Corp.*, No. 09-20971-CIV, 2011 WL 705403, at *5 (S.D. Fla. Feb. 22, 2011) (dismissing FDUTPA claim because it does not satisfy the heightened pleading requirements of Rule 9(b), noting that "[t]he particularity requirement of Rule 9(b) applies to all claims that sound in fraud, regardless of whether those claims are grounded in state or federal law.").

The same deficiencies in the California claims are also fatal to this claim.  First, the Orlando Plaintiffs' failure to specifically allege that they viewed any SeaWorld statements or advertisements prior to purchasing their tickets precludes standing to challenge such advertisements under FDUPTA.  *See In re NJOY, Inc. Consumer Class Action Litig.*, No. CV1400428MMMJEMX, 2015 WL 4881091, at \*22 (C.D. Cal. Aug. 14, 2015) ("[W]here a plaintiff has not seen or heard an allegedly deceptive advertisement, she cannot challenge it under the FDUTPA.").  Second, even assuming the FAC did allege that the Orlando Plaintiffs had actually viewed any advertisements or statements, the FAC does not allege the misrepresentations and omissions with the specificity required by Rule 9(b).  Accordingly, for the same reasons the California claims fail, the FDUTPA claims fail as well.  Unlike the California claims, however, neither party goes into much detail with respect to the duty to disclose in Florida, and the Court declines to determine on its own whether Florida law imposes on SeaWorld a duty to disclose the information allegedly omitted.  Therefore, all of the FDUTPA claims, including those based on omissions, are dismissed without prejudice.

### B. Unjust Enrichment

SeaWorld also moves to dismiss Plaintiffs' unjust enrichment claims because they are incapable of class treatment.  Plaintiffs do not directly dispute this assertion and instead respond that such determination is best put off until the court considers class certification.  The Court, however, need not address this argument now.  The unjust enrichment claim is premised on the same alleged fraudulent conduct that forms the basis of all of Plaintiffs' claims.  Because the claim is based on fraud, Rule 9(b) applies.  Thus, the same deficiencies in Plaintiffs' FDUTPA claim are also present with respect to this claim.  Accordingly, this claim is dismissed without prejudice.

### V.   The San Antonio Class Claims

### A. Texas Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code § 17.41)

SeaWorld also moves to dismiss the Texas Plaintiff's Texas Deceptive Trade

Practices Act ("TDTPA") claim on similar grounds.  "To state a claim under the [TDTPA], plaintiffs must allege that (1) they were consumers of Defendants' goods or services; (2) Defendants violated a specific provision of the [TDTPA], and [(3)] that Defendants acts were a 'producing cause' of actual damages."  *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1121 (N.D. Cal. 2015) (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996)).  "The [TDTPA] requires a showing of reliance."  *In re Clorox Consumer Litig.*, 301 F.R.D. 436, 446 (N.D. Cal. 2014).

The heightened pleading standards of Rule 9(b) applies to TDTPA claims arising out of alleged fraudulent conduct.  *Marcus v. Apple Inc.*, No. C 14-03824 WHA, 2015 WL 151489, at *3 (N.D. Cal. Jan. 8, 2015) ("Plaintiffs' fraud-based [TDTPA] claims alleging false, misleading, or deceptive acts or practices are similarly subject to FRCP 9(b).") (citing *Frith v. Guardian Life Ins. Co. of Am.*, 9 F.Supp.2d 734, 742 (S.D.Tex. 1998)).  Thus, because the Texas Plaintiff's claims arise out of the same alleged fraudulent conduct as the California and Florida claims, Rule 9(b) applies here.  Plaintiffs do not argue otherwise.

For all of the reasons discussed above, the FAC's failure to satisfy Rule 9(b) is fatal to this claim.  First, the FAC fails to allege any misrepresentations or omissions with specificity.  Second, the FAC fails to allege that the Texas Plaintiff actually viewed or heard any alleged misrepresentations by SeaWorld before purchasing her tickets, let alone relied on them in making her purchase.  *See In re Carrier IQ, Inc.*, 78 F. Supp. 3d at 1123 (dismissing TDTPA claim because complaint did not allege that "Defendants' marketing efforts reached them as consumers" and therefore did not adequately plead that the defendants were a "producing cause" of their actual damages); *see also In re Sony Gaming Networks & Customer Data Security Breach Litig.*, 996 F.Supp. 2d. at 1008 (dismissing TDTPA claim in part because it was "factually impossible" for misrepresentations contained in documents that the plaintiffs did not see until after purchasing the products "to have been the 'producing cause' of [their] decision to purchase").  Accordingly, the

Texas Plaintiff's TDTPA claim is dismissed without prejudice.[19]

### B. Unjust Enrichment

The parties make identical arguments with respect to the San Antonio Plaintiff's unjust enrichment claim as they do with respect to the Orlando Plaintiffs' unjust enrichment claim. Accordingly, for the same reasons, this claim is dismissed without prejudice.

## VI.   Injunctive Relief

SeaWorld separately moves to dismiss all of the plaintiffs' claims for injunctive relief. "A plaintiff must demonstrate standing for each form of relief he seeks. A determination that a plaintiff has standing to seek damages does not ensure that the plaintiff can also seek injunctive or declaratory relief." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 191-92 (2000)). Plaintiffs, as the parties invoking federal jurisdiction, bear the burden of demonstrating that they have standing to seek injunctive relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

To that end, a plaintiff must satisfy three requirements to have standing for injunctive relief in federal court: (1) an injury in fact that is both (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the conduct complained of and the injury; and (3) a favorable decision would likely redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

There is a split of opinion among courts in this circuit concerning whether a plaintiff who is not likely to purchase a falsely advertised product again has standing to seek injunctive relief or represent a class seeking injunctive relief. Some courts have held that

---

[19] As with the FDUTPA claim, the parties do not discuss the duty to disclose under Texas law in any detail, so this claim, including to the extent it is based on omissions, is dismissed without prejudice. That being said, the duty to disclose under Texas law appears to be narrower than under California law. *See generally Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998) ("Generally no duty of disclosure arises without evidence of a confidential or fiduciary relationship.").

a plaintiff "need not allege that he will willingly subject himself to future injury, or that he will be fooled by false advertising he now knows to be false, in order to seek injunctive relief on behalf of a class." *Shahinian v. Kimberly-Clark Corp.*, No. CV 14-8390 DMG(SHx), 2015 WL 4264638, at *4 (C.D. Cal. Jul. 10, 2015); *see also Henderson v. Gruma Corp.*, No. CV 10-04173 AHM AJWX, 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011) (holding that plaintiff could represent class seeking injunctive relieve because alleged false advertising continued).  In contrast, other courts have held that "it is improper 'to carve out an exception to Article III's standing requirements to further the purpose of California consumer protection laws.'" *Forcellati v. Hyland's, Inc.*, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *13 (C.D. Cal. Apr. 9, 2014) (quoting *Mason v. Nature's Innovation, Inc.*, No. 12CV3019 BTM DHB, 2013 WL 1969957, at *5 (S.D. Cal. May 13, 2013)); *see also Opperman v. Path, Inc.*, 84 F.Supp. 3d 962, 988 (N.D. Cal. 2015) ("[A] Plaintiff seeking injunctive relief must allege at least a willingness to consider purchasing the product at issue in the future."); *Davidson*, 2014 WL 3919857, at *5 ("Allegations that a defendant's conduct will subject unnamed class members to the alleged harm is insufficient to establish standing to seek injunctive relief on behalf of the class.").

Here, there is no chance of the Plaintiffs being misled by SeaWorld's alleged false statements and omissions concerning the treatment of whales at SeaWorld parks as the FAC does not allege that Plaintiffs ever believed or relied on any statements by SeaWorld concerning the whales, and it is clear that Plaintiffs do not intend to visit SeaWorld parks again.  In these circumstances, the Court is persuaded by the cases holding that such plaintiffs lack Article III standing to seek injunctive relief on behalf of themselves or on behalf of a class.  *See generally Frenzel v. AliphCom*, 76 F.Supp. 3d 999, 1015 (N.D. Cal. 2014) ("A plaintiff who is not himself entitled to seek injunctive relief may not represent a class that seeks such relief.").  Accordingly, Plaintiffs' claims for injunctive relief are

dismissed with prejudice.[20]

## VII. Disposition

For the reasons discussed above, SeaWorld's motion to dismiss is **GRANTED**. Plaintiffs' claims are dismissed as follows:

1. The UCL, FAL and Deceit claims are **DISMISSED WITHOUT PREJUDICE** to the extent they are premised on affirmative misrepresentations concerning the health or conditions of captivity of killer whales at SeaWorld's San Diego park, and **DISMISSED WITH PREJUDICE** to the extent they are based on pure omissions[21] concerning the health or conditions of captivity of killer whales at SeaWorld's San Diego park;

2. The CLRA claim is **DISMISSED WITH PREJUDICE**;

3. The FDUTPA, TDTPA, and unjust enrichment claims are **DISMISSED WITHOUT PREJUDICE**; and

4. All claims for injunctive relief are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Plaintiffs have leave to file a second amended complaint on or before **January 25, 2016**.

It is **SO ORDERED**.

Dated:  December 23, 2015

_____

Hon. Cathy Ann Bencivengo
United States District Judge

---

[20] This holding may not preclude Plaintiffs from seeking an injunctive remedy in state court. *See generally Mason*, 2013 WL 1969957 (noting that "California courts are not bound by the 'case or controversy' requirement of article III of the United States Constitution, but instead are guided by 'prudential' considerations.") (quoting *Bilafer v. Bilafer*, 161 Cal.App.4th 363, 370 (Cal. Ct. App. 2008)).

[21] A second amended complaint may include claims based on omissions to the extent the allegedly omitted material is directly "contrary to a representation actually made by the defendant." *Wilson*, 668 F.3d at 1141. However, as discussed herein any such claim must plead with particularity the named plaintiffs relied on the specific affirmative misrepresentations which are contradicted by the allegedly omitted material. Thus, in effect, such an "omission" claim is merely an affirmative misrepresentation claim by another name.